PARKER *et al.* v. SEXTON & SON.

1. **Tax sale :** WHERE PART OF TAX IS ILLEGAL. Where a tax sale is made for an aggregate tax, a part only of which is illegal, such illegal tax will not affect the validity of the sale, or the right and title conveyed by the treasurer's deed. *Eldridge* v. *Kuehl*, 27 Iowa, 160 ; Rev. §§ 753, 762.

2. —— POWER OF TREASURER TO MAKE SECOND DEED. The power of the treasurer to make a second and corrected deed, conveying the title, when the first deed is defective or void, is affirmed. Following *McCready* v. *Sexton, ante,* 356. WRIGHT, J. *dissenting,* as in that case.

3. —— TAX WARRANT. The *tax warrant* is not an essential step or fact in a tax sale. The power of the treasurer to sell is derived from the statute directly, and it is immaterial whether the tax warrant has a seal or was issued by order of the board of supervisors, or even whether there was a tax warrant.

4. —— The case of *Corbin* v. *Hill*, 21 Iowa, 70, conmmented on and explained.

*Appeal from Dallas District Court.*

WEDNESDAY, AUGUST 31.

SUIT in equity to quiet title in plaintiffs to an undivided half of the south half of the north-east quarter of section twenty, and to the whole of the south-east quarter of the north-east quarter of section thirty-six, all in township eighty one, north of range twenty-six west of the fifth principal meridian. The plaintiffs aver their ownership thereof, and that defendants claim ownership of the same by tax title, which they aver is void by reason of certain alleged irregularities in the assessment, levy, sale and conveyance for taxes. The defendants, by answer, deny plaintiffs' ownership of the land and the other averments of the petition, and claim title to the whole of it under tax sale and deed, which they aver were regular and valid.

Trial by the first method. The plaintiffs introduced

the duplicate of original entry of the land, showing the entry of the first two named parcels by Lafayette Parker and Nathan McDowell jointly, and of the last by Lafayette Parker alone; they then introduced the deposition of Jonathan Parker, showing that Lafayette Parker died in 1855, leaving plaintiffs as his only heirs at law; then a certified copy of a tax deed, duly recorded, made by the treasurer of Dallas county, November 8, 1865, showing the sale of the land in controversy, with many other tracts, *en masse*, as in *Boardman* v. *Bourne*, 20 Iowa, 134; then a copy of a second or corrected deed, also duly recorded, made by the treasurer of Dallas county, December 19, 1866, showing a sale of the land in parcels, in 1862, for the taxes of 1860 and 1861, and a conveyance of it to defendants; then, the tax warrant attached to the tax list of 1860, signed by the county judge and attested with the county seal; then the tax warrant attached to the tax list of 1861, signed by the clerk and attested with the seal of the district court of Dallas county; then the tax list of 1860, showing the first two tracts of lands as listed in the name of Nathan McDowell in two descriptions, but aggregated as one hundred and sixty acres, valued at $600, and taxed as a whole; then the tax list of 1861, showing all the land listed and valued in forty acre tracts, but to no owner.

The plaintiffs then introduced the record of the proceedings of the board of supervisors, showing the absence of any record of the proceedings to adopt or procure a seal, or any directions to the clerk to attach the tax warrant to the tax list, or to affix any seal thereto; then, the proceedings showing the regular levy of the taxes, for 1860 (except the school tax, none was levied); then, the certificate of sale of the land in controversy by the treasurer to the defendants, October 6, 1862, with many other tracts, *en masse*, as recited in the first deed above men-

Parker v. Sexton & Son.

tioned; then, the deposition of J. R. Joy, showing that he had been clerk of the district court of Dallas county since January 1, 1867, and had never seen any notice of publication of the delinquent tax list for 1860 or 1861, nor any certificates or affidavits of such publication on file in his office, etc., and that he had made diligent search for the same. Plaintiffs there rested.

The defendants then introduced the levy of the tax for 1861 by the board of supervisors, and also of the school tax for that year; also, the record of tax sales made October 6, 1862, showing the sale of the land in controversy in forty acre tracts for the tax of 1860 and 1861, for the amount of taxes, etc., due on each forty for the year 1861, and for one-fourth the amount of taxes, etc., due on the one hundred and sixty acres for the year 1860; also, offered the deposition of F. S. Graham, showing that he sold the land as appears by the tax book; that he made the first deed and had it recorded before he sent it to plaintiffs, who lived in New York; that defendants requested him to take it to the recorder; which was all the evidence in the case. The district court dismissed the plaintiff's petition and adjudged to defendants their costs. The plaintiffs appeal.

*D. B. Nash* for the appellants.

*J. R. Reed* for the appellees.

COLE, Ch. J.—There are but three questions, substantially, made and relied upon by appellants' counsel in his 1. TAX SALE: re-argument of this cause. The first is that where part of tax is illegal. the sale was made in part for a school tax which was never levied; and hence that portion of the tax was illegal, and the sale is vitiated thereby. But Revision, sections 753, 762, expressly provides that such illegal tax shall not affect the validity of the sale, or the

right and title conveyed by the treasurer's deed, provided the property was subject to taxation for any of the purposes for which any portion of the taxes for which the land was sold was levied; that the taxes were not paid before the sale and that the property has not been redeemed from sale.

These sections, however, are assailed by appellants' counsel as unconstitutional. We cannot so consider them. If any portion of the tax was legal, *the power* to sell would arise therefrom. The fact that erroneous or illegal taxes were associated with the valid and legal, would not defeat the power, any more than if they had been entirely omitted. So long as the power and right to sell exists as to any part of the taxes, the owner is not prejudiced by the erroneous or illegal part, since his property would be sold for the valid part, and he is entitled to have the erroneous portion refunded. See *Eldridge* v. *Kuehl*, 27 Iowa, 160.

It is next claimed that the first deed which showed a sale, *en masse*, of very many non-contiguous tracts was 2. — power of void, and that the treasurer had no power to treasurer to make second execute the second deed, and hence, that is deed. void also. But we have already held in the case of *McCready* v. *Sexton*, at the present term, *ante*, 356, that the treasurer has the power, and it is his duty to execute a second and corrected deed, conveying the title, when the first deed is defective or void, and where the facts, from which to make the correction, as in this case, appear of record. Upon this point, WRIGHT, J., dissents, as he did in the case referred to.

The next question made is, upon the fact that no direction by the board of supervisors for attaching the tax 3. — tax warrant to the tax duplicate, appears of record; warrant. and the further fact that the tax warrant is not attested by the official seal of the board, instead of the

seal of the district court; and it is claimed that this informality renders the sale of the land void.

A careful analysis of our revenue statute will show the error of this claim. Revision, § 748 : "An entry shall be made upon the tax list showing what it is, and for what county and year it is, and the clerk of the county board of supervisors, shall attach thereto a warrant under his hand and the official seal of said board, in general terms, requiring the treasurer to collect the taxes therein levied according to law, and no informality in the above requirements shall render any proceedings for the collection of taxes illegal. The clerk of the county board of supervisors shall cause the tax book to be delivered to the treasurer of the county by the first Monday of November, and his receipt taken therefor, and such list or book shall be full and sufficient authority for the collector to collect taxes therein contained." Now, it will be observed, that, by the provisions of this section, the tax warrant requires the treasurer to collect, and is his authority for the collection of, the taxes in the tax list contained. But it does not authorize him to collect taxes therein named by distress and sale of personal property ; nor to sell real estate ; nor does it exempt him from personal liability for illegal or erroneous taxes collected by him. In short, the tax list and warrant, as provided by this section, becomes simply the authority of the treasurer to collect or receive the taxes—nothing more.

And, if there were no other provisions in our revenue law respecting the enforcement of the collection of the taxes, this section would not authorize the seizure or sale of either personal or real property. It was directly held by this court, in *Ham v. Miller*, 20 Iowa, 450, that the express power given to a city in its charter to "provide for the assessment of all taxable property," and "to collect taxes," etc., did not include the power to sell or con-

vey real estate in case of non-payment ; and this adjudication was re-affirmed in *Merriam* v. *Moody*, 25 id. 163, and it was therein stated that all the adjudged cases, without exception, were to the same effect.  So that, if there was nothing more in our revenue law giving authority therefor than the tax list and warrant as provided in this section 748, there would be no power to either seize or sell property for the non-payment of taxes.  It is clear, then, upon general principles, that the power to sell does not come from the tax warrant.

It is further provided, by section 751, that the treasurer (after making entries upon the tax list of the delinquent taxes for previous years) " shall proceed to collect the taxes, and the list and warrant shall be his authority and justification against any illegality in the proceedings prior to receiving the list, etc.  This, without giving him any additional authority, simply exempts him from a personal liability to which he might otherwise be subject.

And the idea that the tax warrant confers no other authority than merely to collect or receive the taxes, finds further support in section 756 : "No demand of taxes shall be necessary, but it is the duty of every person subject to taxation to attend at the office of the treasurer (unless otherwise provided) at some time during the time mentioned in a previous section of this act, and pay his or her taxes ; and if any one neglects to pay them before the first day of February following the levy of the tax, the treasurer is directed to make the same by distress and sale of his or her personal property, excepting such as is exempt from taxation, and *the tax list alone* shall be sufficient warrant for such distress."

So that the tax warrant is fully exhausted, and its object accomplished, when it clothes the treasurer with the authority to collect the taxes.  For, when it comes to enforcing the payment by distress and sale of personal

property, the tax list alone is the authority — the tax warrant has no connection with it.

And, for the sale of real property for the payment of the taxes, there is an express and independent statutory command and authority found in section 763: " On the first Monday of October, in the year 1860, and in each year thereafter, the county treasurer is required to offer at public sale, at the court-house, or at the office of the county treasurer, all lands, town lots, or other real property on which taxes of any description for the preceding year or years shall have been delinquent, and remain due and unpaid; and such sale shall be made for and in payment of the total amount of taxes, interest and costs due and unpaid on such real property. Section 764 directs the manner of advertisement or notice of sale, etc.; and it is then provided by section 765, that " the county treasurer shall attend at the court-house in his county, or at his own office, as hereinbefore provided, on the day of sale, and then and there, at the hour of ten o'clock in the forenoon, proceed to offer for sale, separately, each tract or parcel of real property advertised for sale, on which the taxes and costs shall not have been paid."

The mandate and authority for the sale of real estate for taxes are very clearly and specifically given by these provisions themselves; and that, too, without any reference to or aid from the tax warrant. The latter is simply an authority to collect or receive the taxes; the power to sell real estate is derived directly from the statute. We conclude, therefore, that whether the tax warrant in this case was attached by the clerk under the direction of the board, or properly attested and sealed, are questions not at all connected with the validity of the sale, and cannot affect the result.

The statutes of the different states prescribe various regulations as to the authority to sell real estate for taxes

Some, like ours, direct it by statute, as formerly in Pennsylvania. See *McCoy* v. *Turk*, 1 Penn. 499. In others, where a judgment is required, a precept or other process is delivered to the officer, which constitutes his authority to sell, as formerly in Illinois (see *Hinman* v. *Pope*, 1 Gilmn. 131) ; and in Ohio (see *Lessee of Wilkins* v. *Huse*, 9 Ohio, 154). And see other rules and cases stated and collected in Blackwell on Tax Titles (2d ed.) 251–253.

The idea that the tax warrant under our law is not an essential to the title is somewhat further strengthened by the fact that section 784, which states the facts of which the deed shall be evidence, does not name the tax warrant, while every other step or act is named, thereby showing that it was not regarded as any part of the proceedings or steps to a *sale*.

In this connection, it is proper that we refer to the case of *Corbin* v. *Hill*, 21 Iowa, 70, which, upon a bare reading, appears not to be in harmony with this view. But this question was not made in that case. Both parties there conceded the materiality and necessity of a valid tax warrant to authorize the sale, and the only question as to the warrant was, whether it conformed to the statute, and not whether it was essential to a valid sale. This latter was conceded. The court decided the question the counsel therein made, and grounded it upon their concessions, a majority holding that the tax warrant in that case was valid. It was intimated in that case, also, that the portion of section 784 which made the tax deed conclusive evidence of material and fundamental steps in sales for taxes was unconstitutional ; and that intimation has now settled into an adjudication in accordance therewith. *McCready* v. *Sexton, ante*, 356.

Some things are said in the argument about the failure to give the proper notice of the sale, and other failures to comply with the formal and directory parts of the

statute. It is unnecessary to notice them further than to say, that they have all been anticipated and corrected by the curative provisions of the statute itself, as well as concluded by the decisions of this court. *Allen* v. *Armstrong*, 16 Iowa, 508 ; *Stewart* v. *Corbin*, 25 id. 144.

Affirmed.