TALLMAN v. COOKE ET AL.

TALLMAN v. COOKE AND MOORHEAD.

1. **Taxation:** LEVY: WHAT CONSTITUTES. Where the record disclosed that the board to levy taxes met for that purpose and "decided" what should be the rates of taxation for the various purposes, their order was held to constitute a levy.

*Appeal from Humboldt District Court.*

THURSDAY, JUNE 8.

THE plaintiff, Tallman, in these suits, files his petitions in equity to cancel certain tax deeds under which defendants claim title, respectively, to the land in controversy. The facts in the two cases are substantially the same except as to the land involved. In the first suit the land was sold for the taxes of 1859 and 1860, and in the second suit part of the land was sold for the same years, and the remainder for 1858, 1859, and 1860.

It is claimed by plaintiff that there was no levy for 1858 or 1859, and that, even if there was, all the land was sold by virtue of an alleged tax list of 1860, and that the said tax list was void on the ground that there was no levy of taxes for that year. Decrees for defendants. Plaintiff appeals.

*Clark & Moulton*, for appellant.

*De Witt C. Cram*, for appellees.

ADAMS, J.—I. The record of the Board of Supervisors of Humboldt county contains the following entry:

1. TAXATION: levy: what constitutes.

"COUNTY COURT, Sept. 26, 1859.

"This day met at this office, T. Ellwood Collins, county surveyor, Alex. McLean, recorder and treasurer, and A. W. Marsh, county judge, forming a board to levy taxes for the year 1859, when it was decided as follows:

"State tax, $1\frac{1}{2}$ mills.
"County tax, 4 mills.
"School tax, 1 mill.
"Road tax, 1 mill.
"Poll tax, 50 cents per head.

Certified.

THOS. ELLWOOD COLLINS,
*Co. Surveyor.*

ALEX. McLEAN,
*Recorder and Treasurer.*

A. W. MARSH,
*County Judge.*"

It is contended by the appellant that the foregoing fails to show any levy for the year 1859. It is, however, stated that the persons mentioned met to levy taxes, etc. It is also stated that "it was decided as follows: State tax, $1\frac{1}{2}$ mills," etc. It is not, to be sure, stated explicitly that the levy is made, and so it is contended that the fair inference is that there was only an agreement as to what taxes ought to be lev-

ied.   But as they met for the purpose of making a levy, and reached an agreement as to what the levy should be, we see no reason why they should adjourn without making it, when nothing but a mere formal act, at most, was to be done.   The statute prescribes no particular form of words in which a levy shall be made, and any words must be deemed sufficient which indicate, however informally, such intention.   Taking the record altogether, therefore, the stated purpose of the meeting, the decision made, and the duty which the law imposed, we are not permitted to doubt that what was done was considered a levy.

II.   If the tax for 1859 was legal, then the sale was not invalid unless by reason of the invalidity of the tax list of 1860.   *Rhodes v. Sexton & Son*, 33 Iowa, 540; *Parker v. Sexton & Son*, 29 Iowa, 421; Rev., Secs. 753, 762.

It is claimed, however, that no valid sale can be made except upon a valid tax list, and that the tax list of 1860 was not valid.   Without stopping to consider how far the tax list constitutes the treasurer's authority to make the sale, we are of the opinion that while the tax list under which the sale was made was nominally the list for 1860, yet inasmuch as the taxes of 1859 were carried into it, it was so far a valid list.   As all the land was sold for the taxes of 1859, we think the sale was valid.

III.   It is claimed that the land was sold in a mass.   But we are satisfied from the testimony of Berg, the treasurer, that the lands were sold in parcels of forty acres each.

AFFIRMED.