Grant v. Bartholomew.

J. RALSTON GRANT, APPELLANT, V. WILLIAM O.
BARTHOLOMEW, APPELLEE.

FILED FEBRUARY 9, 1899.    No. 8534.

1. **Pleading**: ABSENCE OF REPLY: EFFECT.    Though the evidence dis-
proves the material allegations of new matter in an answer,
such evidence will be disregarded, unless such new matter is
denied by a reply.    (Code of Civil Procedure, sec. 134.)

47

2. **Taxation.** The listing and assessment of real estate for taxation in the name of a person then deceased do not invalidate such assessment or the taxes levied thereon.

3. ———: EQUALIZATION: WANT OF NOTICE. A board of county commissioners, sitting as a board of equalization, without notice to the landowner and without a complaint that his real estate was assessed too low, raised the value placed thereon by the assessor. *Held,* That the board was without jurisdiction and its action a nullity.

4. ———: ———: ———. Such action of the board of equalization did not vitiate the assessment made of the property by the assessor.

5. ———: ———: ———. Only so much of the tax as arose out of the difference between the valuation placed upon the property by the assessor and the value attempted to be placed thereon by the board of equalization is illegal.

6. ———: DISTRESS WARRANT. To invest a county treasurer with jurisdiction to seize personal property for the satisfaction or enforcement of a tax lien thereon the warrant provided by section 83 of the revenue law must be attached to the tax list. *Reynolds v. Fisher,* 43 Neb. 172, followed.

7. ———: REALTY: LIABILITY OF OWNER. Under our revenue law a real estate tax is not the personal obligation of the real estate owner. The real estate, and not the owner thereof, is liable for its payment.

8. ———: SALE. The warrant provided by section 83 of the revenue law to be attached to the tax list is not essential to invest a treasurer with jurisdiction to sell real estate for the non-payment of taxes which are delinquent and a lien thereon.

9. ———: ———. The county treasurer's authority and jurisdiction to make such a sale of real estate is derived from the express and mandatory provisions of sections 109 and 113 of the revenue law. (Compiled Statutes, ch. 77, art. 1.)

10. ———: ———: WARRANT. Assuming that the warrant provided by section 83 of the revenue law must be attached to the tax list to invest the county treasurer with jurisdiction to make a sale of real estate for delinquent taxes thereon, then a sale made by the county treasurer, where such warrant was not so attached to the tax list, would be void.

11. ———: ———: ———. But though such a sale would be void as a tax sale within the meaning of the revenue law, and such sale and subsequent statutory proceedings under it could never have the effect of divesting the landowner's title to the real estate and vesting it in the purchaser at the sale, still the rule in this jurisdiction is that such a void sale is effective as an assignment

and transfer of the liens of the public to the tax purchaser and invests him with all liens and rights which the public had against said real estate by reason of the taxes assessed and delinquent thereon.

12. ——: ——: ——. This rule is not the creature of this court, but it is founded upon the revenue legislation of the state.

13. ——: REVENUE LAW. The theory of our revenue law is that a purchaser of real estate at a sale made thereof for delinquent taxes shall not lose his money. If no tax was due on the real estate at the time of the sale, then the county is to reimburse the purchaser the money paid. If the land was liable to taxation, and there was a legal tax due and delinquent against the land, then, if the tax purchaser failed to acquire a good title to the real estate because of any violation of the revenue law or the failure of public officers to comply with its provisions, the law declares that the sale shall nevertheless be effective as an assignment of the public's rights and liens against the real estate to the attempted tax purchaser thereat.

14. ——: TRUSTS: COUNTIES. The various counties in this state are trustees of the state and the various cities, villages, and school districts within their borders for the collection of the public revenue.

15. ——: COUNTIES. A county is a person within the meaning of section 1, article 5, of the revenue law of 1879. (Compiled Statutes 1897, ch. 77, art. 5, sec. 1.)

16. ——: LIEN: FORECLOSURE BY COUNTY. Under the revenue laws of this state a county may enforce its lien for taxes against real estate by an ordinary foreclosure suit in a court of equity after the taxes on such property have become delinquent and after the time the property becomes liable for sale for the non-payment of such taxes.

17. ——: ——: ——. It seems that the right of a county to maintain a suit in equity to foreclose the public's lien against real estate for the non-payment of taxes thereon exists independently of statute.

18. ——: SALE. A county treasurer has no authority to sell real estate for the delinquent taxes of one year without including in such sale all taxes delinquent against such real estate for all previous years.

19. ——: ——: INTEREST. One who purchases real estate at a void sale attempted to be made thereof by the county treasurer for the non-payment of delinquent taxes thereon is entitled to the same rate of interest upon the taxes paid by him that such taxes were drawing at the time he paid them.

APPEAL from the district court of Douglas county. Heard below before DUFFIE, J. *Reversed.*

*Saunders & Macfarland,* for appellant:

The burden of proof is upon the defendant. (*Miller v. Hurford,* 13 Neb. 14; *Adams v. Osgood,* 42 Neb. 450; *Towle v. Holt,* 14 Neb. 221; *Dillon v. Merriam,* 22 Neb. 151; *Bryant v. Estabrook,* 16 Neb. 217.)

The defenses alleged in the answer are technical, and are not a defense to an action for the foreclosure of a tax lien. (*Roads v. Estabrook,* 35 Neb. 297; *Merriam v. Dovey,* 25 Neb. 618; *Otoe County v. Matthews,* 18 Neb. 466.)

The decree is absolutely void for want of findings of fact. (*Doty v. Summer,* 12 Neb. 378; *Connelly v. Edgerton,* 22 Neb. 82; *Petalka v. Fitle,* 33 Neb. 756.)

*D. L. Thomas* and *W. O. Bartholomew, contra.*

References: *Merrill v. Wright,* 41 Neb. 351; *Leavitt v. Bell,* 55 Neb. 57; *National Lumber Co. v. Ashby,* 41 Neb. 292; *Van Etten v. Kosters,* 48 Neb. 152; *Smith v. Davis,* 30 Cal. 536; *Cruger v. Dougherty,* 43 N. Y. 107; *McGee v. State,* 32 Neb. 149; *State v. Edwards,* 31 Neb. 369; *Morrill v. Taylor,* 6 Neb. 246; *Morris v. Merrill,* 44 Neb. 423; *Thames Mfg. Co. v. Lathrop,* 7 Conn. 550; *Marsh v. Chestnut,* 14 Ill. 223; *Ledwich v. Connell,* 48 Neb. 172; *Reynolds v. Fisher,* 43 Neb. 172; *Reynolds v. McMillan,* 43 Neb. 183; *Croskery v. Busch,* 74 N. W. Rep. [Mich.] 464; *Van Nest v. Sargent County,* 73 N. W. Rep. [S. Dak.] 1083; *Sioux City & P. R. Co. v. Washington County,* 3 Neb. 30; *Hutchinson v. City of Omaha,* 52 Neb. 345; *Baldwin v. Douglas County,* 37 Neb. 283; *Case v. Dean,* 16 Mich. 12; Cooley, Taxation 295 and note 1, 296; *Harmon v. City of Omaha,* 53 Neb. 164; *Smith v. City of Omaha,* 49 Neb. 883; *Frosh v. City of Galveston,* 73 Tex. 409; *Flewellin v. Proetzel,* 80 Tex. 195; *Erickson v. First Nat. Bank,* 44 Neb. 622; *Scroggin v. Johnston,* 45 Neb. 714; *Hamilton v. Home Fire Ins. Co.,* 42 Neb. 883; *Coad v. Read,* 48 Neb. 40.

RAGAN, C.

J. Ralston Grant brought this suit in the district court of Douglas county against William O. Bartholomew to foreclose a lien upon lot 28, in Horbach's First Addition to the city of Omaha, based on a tax-sale certificate issued to Grant's assignor by the county treasurer of Douglas county on June 11, 1890, pursuant to a private sale then and there made by said treasurer of said real estate for the delinquent taxes thereon for the year 1888, said taxes and interest then and there amounting to the sum of $29.65. Grant, in his petition, also alleged that on June 11, 1890, and at various dates since that time, he had paid and discharged taxes levied and assessed upon said lot, and which were liens thereon, for years both prior and subsequent to the year 1888. The prayer of Grant's petition was for an accounting of the amount due him on his tax lien, and for the taxes paid by him to protect such lien, and for a decree foreclosing it. As a defense to the action Bartholomew, in his answer, interposed, in effect, first a general denial, and then set up, as separate and distinct defenses, certain new matter, which will be hereinafter noticed. There was no reply filed to this answer. The district court entered a judgment dismissing Grant's action, and he has appealed.

1. The evidence discloses that the real estate in controversy was sold to Grant's assignor by the county treasurer of Douglas county on June 11, 1890, at a private tax sale for the delinquent taxes thereon for the year 1888; that these taxes—or part of them at least—were legally levied upon this property, were unpaid and delinquent, and a lien upon the property; that Grant, at that time and at various times subsequent thereto, paid and discharged other taxes which had been legally levied upon such property and were due and delinquent. The decree of the district court cannot, therefore, be sustained, unless it rests upon the allegations of new matter pleaded

by Bartholomew in his answer as defenses to the action, and which new matter was not denied by a reply; and we now proceed to an examination of the new matter set up in the answer as a defense to this action, and, in obedience to section 134 of the Code of Civil Procedure, shall treat these averments of new matter as true.

2. As a defense Bartholomew alleged that the real estate was assessed in the year 1888 in the name of Abner French; that he died in 1885, and therefore the assessment, upon which the tax sale was based, was void. In support of this contention *Smith v. Davis*, 30 Cal. 537, and *Cruger v. Dougherty*, 43 N. Y. 107, are cited. In those cases certain assessments were held void because the property was assessed in the name of a person then deceased; but the courts reached the conclusion they did in those cases because of the peculiar language of the revenue laws construed. The cases are not authority here for the contention in support of which they are cited, as our revenue law provides that no assessment of real property shall be considered as illegal by reason of the same not being listed or assessed in the name of the owner or owners thereof; and no sale of real property for taxes shall be considered invalid on account of the same having been charged (assessed) in any other name than that of the rightful owner. (Compiled Statutes 1897, ch. 77, art. 1, secs. 43, 136; *Lynam v. Anderson*, 9 Neb. 367.) The theory of our revenue law is that real estate taxes are a charge against real estate only; that real estate taxes are not the personal debt or obligation of the real estate owner.

3. Another defense was that the property in controversy, in 1884, was valued by the assessing officer at $350, and that subsequently the board of county commissioners of Douglas county, sitting as a board of equalization, without notice to Bartholomew, raised this assessment to $385. The argument is that all the 1884 taxes levied against this property were void and that Grant, by paying the same, acquired no lien upon the

property. There can be no doubt but that the action of
the board of equalization in raising the valuation placed
upon this property by the assessor was void. To invest
the board of equalization with jurisdiction to raise the
valuation placed upon this property by the assessor it
was essential that some one should complain to the board
that Bartholomew's property was assessed too low, and
that he should be notified of such complaint, if a resident
of Douglas county, which he was. (*State v. Dodge County*,
20 Neb. 595; *Dixon County v. Halstead*, 23 Neb. 697; *State
v. Edwards*, 31 Neb. 369; *McGee v. State*, 32 Neb. 149;
*Sioux City & P. R. Co. v. Washington County*, 3 Neb. 30;
*South Platte Land Co. v. Buffalo County*, 7 Neb. 253; Com-
piled Statutes 1897, ch. 77, art. 1, sec. 70.) But it does
not follow that the action of the board of equalization
vitiated the assessment made of this property in the year
1884 by the assessor. Though the board of equalization
raised the value placed on the property by the assessor
without having acquired jurisdiction to do so, the prop-
erty is still liable for the taxes which arise out of the
valuation placed on the property by the lawful assessor.
The reason is that all property must bear its just propor-
tion of the burden of taxation; that the law has commit-
ted to the assessors of the state the authority to deter-
mine, subject to the review and revision of the board of
equalization provided for by said section 70, the value
of the taxpayer's property for the purposes of taxation;
and in this case the board was without jurisdiction, its
action was void, and therefore it did nothing. The valu-
ation of $350 placed upon the property by the assessor
remained unaffected by the action of the board of equali-
zation, and only so much of the 1884 taxes as arise out
of the difference between the valuation placed upon the
property by the assessor and the valuation attempted
to be placed thereon by the board of equalization is il-
legal, or, in this case, one-eleventh of the 1884 tax is void.
(*Webster v. People*, 98 Ill. 343; *State v. Allen*, 43 Ill. 456;
*Mix v. People*, 72 Ill. 241; *Mayor v. Los Angeles City Water-*

*Works Co.*, 49 Cal. 639; *Missouri R., F. S. & G. R. Co. v. Morris*, 7 Kan. 210; *South Platte Land Co. v. Board of County Commissioners*, 7 Neb. 253; *Burlington & M. R. R. Co. v. Board of County Commissioners*, 7 Neb. 487; *Sioux City & P. R. Co. v. Washington County*, 3 Neb. 30; *Chicago, B. & Q. R. Co. v. Nemaha County*, 50 Neb. 393; *Spiech v. Tierney*, 56 Neb. 514.) In *State v. McClurg*, 27 N. J. Law 253, the rule is thus stated: "If more tax is assessed than is authorized by law, the assessment will not be void, but will be valid for what the law allows, and the excess only will be remitted." To the same effect is *Avery v. City of East Saginaw*, 7 N. W. Rep. [Mich.] 177.

4. Another defense was that for the year 1886 the assessor valued the property in controversy at $500, and the board of equalization, without notice to Bartholomew, raised it to $550. From what has just been said it follows that one-eleventh of the 1886 taxes on this property is void.

5. Another defense was that for the year 1888 the assessor valued the property in controversy at $800, and that the board of equalization, without notice to Bartholomew, raised the valuation to $1,200. It follows from what we have already held that one-third of the 1888 taxes upon this property is void.

6. Another defense is that the tax list of 1888 delivered by the county clerk to the county treasurer of Douglas county had no warrant attached thereto, as provided by section 83, chapter 77, article 1, Compiled Statutes 1897, and therefore the sale made of the real estate in controversy for the taxes of said year was void for want of jurisdiction in the treasurer to make the sale, and in support of his contention appellee cites us to *Reynolds v. Fisher*, 43 Neb. 172. In that case certain personal property was assessed in 1891. The tax list for that year, when delivered to the county treasurer, had not the county clerk's warrant provided for by section 83 of the revenue act attached thereto. Subsequently the person taxed pledged his personal property by mortgage to

Fisher, who took possession thereof, and thereupon the county treasurer, claiming that the 1891 taxes and the taxes for some of the subsequent years were liens upon the personal property, demanded possession of it, and, this being refused, seized it on a writ of replevin. It was ruled that the treasurer's action, so far as he claimed to be entitled to possession of the property by virtue of the 1891 taxes, must fail. The court, speaking through the present chief justice, said: "As there was no warrant attached to the tax list for 1891, the treasurer had no right to enforce the collection of the personalty tax for that year by distress or other proceedings provided by the statutes in relation to taxes and their collection." And still discussing this feature of the case, namely, whether the treasurer had authority to seize the property for the payment of the 1891 taxes, the chief justice, after quoting section 83 of the revenue act, said: "The warrant provided for in this section is the treasurer's authority for enforcing the collection of any and each particular tax of the list to which it is attached when it becomes necessary to resort to any of the proceedings provided by law. To collect the tax, then, the warrant must be in the hands of the collector, and, in this state, attached to the tax list, as his authorization to institute such proceedings. If he proceeds without it, he becomes a trespasser. An officer of the law who makes a levy must be empowered to do so by the proper writ in his possession. So with the treasurer. The warrant required by the law to be attached to the tax list is the source of the right to use the means of collection provided by the statutes." It must be remembered that all this was said in reference to the right of the treasurer to distrain the personal property in controversy or to seize it on replevin for the taxes of 1891. Now the revenue law (section 139) provides: "The taxes assessed upon personal property shall be a lien upon the personal property of the person assessed, from and after the time the tax books are received by the collector." The law does not make the personal taxes of

the citizen a lien upon his personal property from the
time the tax is assessed thereon, but only from the time
the tax books come into the hands of the county treas-
urer. The personal tax list, when delivered to the county
treasurer, is analogous to a judgment, and to enable the
treasurer to satisfy the tax—judgment—by the seizure
of the personal property of the tax debtor it is essential
that the treasurer should be armed with the tax warrant,
which in that case is his execution. In the *Fisher Case*
the failure of the clerk to attach his warrant to the tax
list did not divest the lien which the public had upon
the taxpayer's property for the personal tax of 1891, and
we did not so hold. Because the clerk had not attached
his warrant to the tax list the treasurer had no execu-
tion in his possession which either authorized or com-
manded him to seize the tax debtor's property for the
1891 taxes, and therefore his seizure of it was illegal. He
was not entitled to possession of it, and that is what we
held in the *Fisher Case;* and all that we said upon the
subject in reference to the tax warrant had reference
solely to this 1891 personal tax, to satisfy which the
treasurer had, without a warrant, without execution,
without any authority, seized the taxpayer's personal
property. But the distinction between the *Fisher Case*
and the one at bar is obvious. Section 138 of the revenue
law makes the taxes assessed against real estate a lien
thereon from the first day of April in the year in which
they are assessed until the taxes are paid. This lien does
not depend for its support upon the tax list being deliv-
ered to the county treasurer. When the tax is assessed,
the lien attaches. If the tax is not assessed until after
April in any year, it relates back and attaches on the
first day of April of that year. No statute in this state
exists which either commands or authorizes the county
treasurer to seize the personal property of the taxpayer
for the payment of the taxes assessed against his real
estate. No provision of law exists authorizing the treas-
urer to institute any legal proceedings for the recovery

of a personal judgment against the owner of real estate for his non-payment of the taxes assessed thereon. The theory of the revenue law is that the land, and not the landowner, is bound for the payment of taxes assessed against real estate. The purpose of the warrant provided for by section 83 of the revenue law is, first, to authorize the treasurer to collect and receive all the taxes enumerated in the tax list from persons who may voluntarily pay them to him; second it is his authority, or writ in the nature of an execution, for the seizure of personal property for the non-payment of personal taxes. But the authority to collect and receive a tax when voluntarily paid and the authority to enforce the collection of personal taxes by some of the means provided for by section 89 of the revenue act are very different things from the authority and power to sell real estate for the non-payment of taxes which are liens thereon. The revenue law not only authorizes, but in mandatory terms commands the treasurer, on the first Monday in November, annually, to offer for sale all real estate upon which there are delinquent taxes. This section 109 is the treasurer's warrant for the sale of real estate for the non-payment of taxes, and the clerk's warrant provided by section 83 of the revenue act was never intended by the legislature to be the treasurer's authority for the sale of real estate for the non-payment of taxes. The treasurer could be compelled by mandamus to sell the real estate for non-payment of taxes thereon according to the provisions of section 109 if no warrant whatever was attached to the tax list. In the case of personal property the tax is a lien from the time the tax books are delivered to the county treasurer. The statutory method of enforcing that lien is by an actual seizure of the personal property. To authorize the treasurer to do this he must be armed with the clerk's warrant, which is his execution. The taxes are a lien upon the real estate from the first day of April in the year in which they are assessed. One of the statutory methods of enforcing and satisfying this

lien is by a sale of the property; and to effect this sale no seizure of the property is necessary, and authority to make the sale is conferred by express provisions of statute. In support of these views see *Parker v. Sexton*, 29 Ia. 421; *Sully v. Kuehl*, 30 Ia. 275; *Johnson v. Chase*, 30 Ia. 308; *Hurley v. Powell*, 31 Ia. 64; *Rhodes v. Sexton*, 33 Ia. 540.

Our conclusion therefore is that to invest the treasurer with jurisdiction to seize personal property for the satisfaction or enforcement of a tax lien thereon the warrant provided by section 83 of the revenue law must be attached to the tax list, but that the presence of such a warrant attached to the tax list is not essential to invest the treasurer with jurisdiction to sell real estate for the non-payment of taxes which are due and a lien thereon; that the treasurer's authority and jurisdiction to make such a sale is derived from the express provisions of sections 109 and 113 of the revenue act. But assuming that this sale was void because the absence of the warrant from the tax list left the treasurer without authority or jurisdiction to make the sale, it does not follow that the purchaser at such attempted sale did not acquire a lien against the land attempted to be sold. Our revenue law must be looked at as a whole to ascertain its objects. The theory upon which the law was framed is that, if taxes upon real estate are not paid, the treasurer shall sell this real estate for the non-payment of such taxes; that he shall execute to the purchaser a tax-sale certificate, and if the owner does not redeem within a certain time, then the owner of this certificate may present that to the county treasurer and procure from him a deed for the lands based upon such sale; and that this deed, when executed and delivered, shall divest the title of the real estate owner to the land and vest it in the tax-sale purchaser or his assignee.

In the case at bar, if the sale by the treasurer for the delinquent taxes of 1888 was void as a tax sale within the meaning of the revenue law, then of course such a sale would not uphold the statutory treasurer's tax deed

for the real estate, even if the latter should be unredeemed and the treasurer should execute a deed in all respects according to the statute and deliver it to the purchaser or his assignee. But though this sale be void as a tax sale within the purview of the revenue law, and though such sale and subsequent statutory proceedings under it could not have the effect of transferring the landowner's title to the real estate in controversy to the tax purchaser, still the sale will be held effective as an assignment and a transfer of the liens of the public to the tax purchaser and invest with or subrogate such purchaser to all the liens and rights against the real estate which the public had by reason of the taxes assessed against it and the liens thereon. Such is the doctrine of this court declared and recognized in the following cases: *Pettit v. Black*, 8 Neb. 52; *Wilhelm v. Russell*, 8 Neb. 120; *Wood v. Helmer*, 10 Neb. 65; *Boeck v. Merriam*, 10 Neb. 199; *Hallo v. Helmer*, 12 Neb. 87; *O'Donohue v. Hendrix*, 13 Neb. 257; *Reed v. Merriam*, 15 Neb. 323; *Shelley v. Towle*, 16 Neb. 194; *Otoe County v. Brown*, 16 Neb. 398; *Merriam v. Hemple*, 17 Neb. 345; *Otoe County v. Mathews*, 18 Neb. 466; *Lammers v. Comstock*, 20 Neb. 341; *Helphrey v. Redick*, 21 Neb. 80; *Parker v. Matheson*, 21 Neb. 546; *Dillon v. Merriam*, 22 Neb. 151; *Merriam v. Dovey*, 25 Neb. 618; *Shepherd v. Burr*, 27 Neb. 432; *Roads v. Estabrook*, 35 Neb. 297; *Stegeman v. Faulkner*, 42 Neb. 53; *Adams v. Osgood*, 42 Neb. 450; *Alexander v. Thacker*, 43 Neb. 494; *Osgood v. Grant*, 44 Neb. 350; *Weston v. Meyers*, 45 Neb. 95; *Frank v. Scoville*, 48 Neb. 169; *Johnson v. Finley*, 54 Neb. 733; *Twinting v. Finlay*, 55 Neb. 152; *Spiech v. Tierney*, 56 Neb. 514; *Medland v. Connell*, 57 Neb. 10. In the foregoing cases, and each of them, the rule stated above will be found recognized in some form; and it will thus be seen that the doctrine that a purchaser at a sale invalid and void as a statutory sale is, nevertheless, held to be the assignee of the public and to acquire at such void sale all the rights and interests against the real estate which the public had. This rule does not seem to be contested by the appellee in

cases where the tax purchaser fails to acquire a perfect title to the real estate because of some irregularity in the tax proceedings or some failure of some officer to follow the express provisions of the revenue law. But the appellee's contention here is, there being no warrant attached to the tax list, that the treasurer was without jurisdiction, and therefore the tax purchaser's payment was a voluntary one and the pretended sale invested the purchaser thereat with no rights whatever. No such a distinction as this can be found in any of the cases just cited, nor in any other case in this court. On the other hand, the uniform holding has been that if the sale was void, no matter for what reason, it was still effective as an assignment of the public's interest.

In *Johnson v. Hahn*, 4 Neb. 139, Johnson brought a suit to enjoin Hahn, who was county treasurer, from offering for sale or selling at public tax sale certain real estate for the taxes of 1870. Johnson admitted that taxes had been legally assessed upon this real estate, and were delinquent and a lien thereon, and alleged that Hahn, as county treasurer, was about to sell it for these delinquent taxes, and as a ground for injunction alleged that he was possessed of sufficient personal property in the county where he resided, and in which the land was situate, out of which the taxes on the land could be made. The revenue law in force at that time provided that the treasurer should only sell real estate for delinquent taxes thereon after he had exhausted the owner's personal property. The court held, in effect, that the treasurer was without jurisdiction to sell until he had exhausted the personal property of the landowner, and that such sale, if made, would be illegal and absolutely void, and issued the injunction as prayed.

In *Pettit v. Black*, 8 Neb. 52, the lands were sold in September, 1872, for the delinquent taxes of the years 1869, 1870, and 1871, and at the time the sale was made the landowner was possessed of sufficient personal property situate in the county in which he resided, and in which

the real estate was situate, out of which the real estate taxes could have been collected, and the court, following *Johnson v. Hahn, supra,* held that the sale made of the real estate by the treasurer was void, because the treasurer was without jurisdiction to make it until he had exhausted the personal property of the real estate owner. The court said: "In this case there is evidence that the county treasurer went through the forms of a sale of these lands, but that he did so in the absence of certain conditions precedent, which * * * were not only necessary to the validity of such sale, but the absence of which renders such sale absolutely void; in other words, render such proceeding no sale. * * * Now while this sale was inoperative to pass even an inchoate title to the lands, yet, together with the receipt and retention of the money from Black, it was sufficient as the foundation for the ratification by the county of the sale and transfer of its lien for these taxes to him. It will be presumed that the county treasurer paid the money received from Black into the county treasury, and that the county, having retained the same for several years, has ratified the acts of her officer in respect to the same. Black will therefore be subrogated to all the rights of the county in the premises." This is the first case in which the rule or doctrine under consideration was announced in this state, and that it has been uniformly adhered to ever since is evident from an examination of the cases just cited. The rule or doctrine that a purchaser at a tax sale will in equity be subrogated to the liens of the public against the property if the title of the purchaser fails because the sale was void is denied in some jurisdictions, and the denial is placed upon the ground that subrogation must rest upon involuntary payment and that a purchaser at a tax sale is a volunteer. But the rule under consideration in force here is a just and equitable one. It has been in force in this state for twenty years, has become a rule of property, and it should not now be disturbed, even if contrary to the weight of authority. This

rule cannot be said to be a creature of this court.   The
authority for the doctrine is found in the revenue legisla-
tion of the state.    From 1871 to 1879 the revenue laws
of this state, in express terms, provided that whenever
the title acquired by a purchaser at a tax sale should fail,
such purchaser should have a lien on the real estate so
purchased for the full amount of his purchase-money,
with interest, and a lien upon such real estate for all
taxes lawfully assessed against the same which such
purchaser might pay. ` (See Session Laws 1871, p. 82, sec.
7.)    This act was repealed by the revenue law of 1879,
and that act provided that when, by mistake or wrongful
act of the treasurer or other officer, land is sold on
which no tax is due, the county shall save the tax pur-
chaser harmless.    (Compiled Statutes, ch. 77, art. 1, sec.
131.)    By section 179 of said revenue act it is provided
that the owner of a certificate of tax sale shall be deemed
the assignee and owner of all the liens for taxes which
the public had upon the real estate described in such tax
certificate and for which it had been sold; and that such
owner may foreclose such tax certificate as a mortgage
for the amount paid for the real estate at the tax sale and
for all subsequent and prior taxes paid by him which
were valid liens upon such real estate.    Now, what was
the object of this legislation?    It was designed as an
incentive and an inducement to persons to purchase real
estate offered for sale by county treasurers for the non-
payment of delinquent taxes thereon so that the state
might collect its revenues and discharge its obligations;
and the legislature, having in mind the abhorrence of the
courts for all forfeitures and the disposition upon their
part to put a strict construction upon revenue laws which
deprived the citizen of his property for a tax much less
than its value, provided that in no event should a pur-
chaser at a tax sale whose title failed lose his money.   If
one purchased at a tax sale real estate on which no tax
was due at the time, then the county was to hold the pur-
chaser harmless by reimbursing him the money he had

paid out at such tax sale; and if the land was liable for taxation, if taxes were due and delinquent against the land, then the owner of a tax-sale certificate was declared to be the assignee and the owner of the liens which the public had against that land and for which the public had sold or attempted to sell it.

But it seems to be the contention of the appellee that though the appellant here may have acquired the liens which the public had against the real estate in controversy by his purchase at the treasurer's alleged void sale, still the appellant did not acquire the right to bring an action to foreclose this tax lien, because the county could not have maintained a suit to foreclose its lien. Of course, if this sale was void, the purchaser thereat acquired no other or different right than the public had, and the question therefore is, Can a county maintain an action in the courts to foreclose and enforce a lien which it has upon real estate for the non-payment of delinquent taxes thereon? The legislatures of 1879 and 1881 enacted what are now articles 3 and 4 of our present revenue law. (Compiled Statutes, ch. 77.) By these enactments county authorities were expressly authorized to purchase from the county treasurer any real estate which had been advertised and offered for sale by him and remained unsold for want of bidders, and in the name of their county foreclose the certificates of tax sale issued to them by the county treasurer. But these provisions of the revenue law have no application to the case at bar, as the real estate in controversy, under the theory of the appellee, has never been sold at all, and therefore the precise question is, May a county maintain an action in the courts to foreclose the public's lien upon real estate for the delinquent taxes thereon without the real estate having been first sold at public sale by the county treasurer? In 1875 the legislature enacted what is now article 5 of our revenue law. Section 2 of this act provided that any person or corporation possessing a certificate of a treasurer's tax sale may foreclose the same according

to the provisions of the act. The other class of cases provided for is found in section 1 of the act, which provided that any person or corporation having, by virtue of any provision of the revenue law of the state, a lien upon any real property for taxes assessed thereon may enforce such lien by an action in the nature of foreclosure of a mortgage for the sale of so much of such real estate as may be necessary to discharge the taxes and interest. It is to be observed that section 2 of the act under consideration applies to persons or corporations who have become purchasers at a tax sale and hold tax-sale certificates, while section 1 of the act applies to persons or corporations having a lien on real estate by virtue of some provision of the revenue law. Now, the various counties of the state act as trustees or agents for the state and for the various cities, villages, school districts, etc., within such counties for the purpose of collecting the public revenue; and by section 138 of the revenue law the taxes on real estate are declared to be a lien thereon from the first day of April in the year in which they are assessed until they are paid. By other provisions of the revenue law taxes upon real estate become due on the first day of October of the year in which they are assessed and become delinquent upon the first day of May of the succeeding year. But by section 109 of the revenue act real estate is not liable for sale for the non-payment of taxes due thereon until the first Monday of November of the year succeeding the year in which they are levied. If, therefore, a county is a person within the meaning of section 1 of said article 5 of the revenue law, we perceive no reason why a county may not enforce a lien for taxes against real estate by an ordinary foreclosure suit in a court of equity after the taxes on such property have become delinquent and after the time the property becomes liable for sale for the non-payment of such taxes. This court, in *Lancaster County v. Trimble*, 34 Neb. 752, and in *Lancaster County v. Rush*, 35 Neb. 119, expressly held that a county is a person within the meaning of said section 1 of said article 5. So

much then for the statutory authority of a county to maintain a suit to foreclose the lien of the public against real estate for the non-payment of taxes thereon. But it seems that the right of a county to maintain a suit in equity to foreclose the public's lien against real estate for the non-payment of taxes thereon exists independently of statute. Such was the ruling of the supreme court of Iowa in *McInery v. Reed*, 23 Ia. 410. (See, also, *Mayor v. Colgate*, 2 Kern. [N. Y.] 140; *United States v. Pacific R. Co.*, 4 Dill. [U. S.] 66.) These cases rest upon the principle that the grant of a lien in any given case of necessity carries with it all the usual modes of enforcing it known to the law. Therefore, if we adopt the view of the appellee that the tax sale in controversy was void, nevertheless such sale was effective as an assignment of the public's lien and its right to enforce such lien upon this real estate,—and included in the right of enforcement was the right of the public to maintain an action to foreclose its tax lien,—without the property having been first sold by the county treasurer.

7. Another defense is that the property in controversy was sold for the delinquent taxes of 1888 only; that at that time there existed taxes against this property which were delinquent and liens thereon for the previous years. The duty of the treasurer in selling property for the delinquent taxes of 1888 was to sell it for all taxes due and delinquent and which were liens thereon for all previous years. He had no authority or jurisdiction to sell real estate for the 1888 taxes without including in such sale all taxes which were liens upon the real estate for all prior years; and because of his omission to include in his sale taxes which were liens against the real estate for the years prior to 1888 the sale was void. But though, as we have already seen, such sale was void as a tax sale within the purview of the revenue act, it was nevertheless operative and effective as an assignment of the public's lien on the real estate to the attempted purchaser thereat. It remains to be said that the purchaser at the

sale in controversy acquired no greater interest in the property than the public had, and is therefore not entitled to any greater rate of interest upon the taxes paid by him than such taxes were drawing at the time he paid them.  (*Adams v. Osgood*, 42 Neb. 450.)

The decree appealed from is reversed and the cause remanded to the district court, not for retrial, but with instructions to enter a decree in favor of Grant as prayed in his petition, deducting, however, from the amount found to be due him one-third of the 1888 taxes paid by him and one-eleventh of the 1884 and 1886 taxes paid by him; the appellant to have interest on the amounts paid by him, from the date of their payment until the date of the decree, at the same rate the taxes were drawing when paid; the decree to draw seven per cent interest.

REVERSED AND REMANDED.

NORVAL and SULLIVAN, JJ., concur.

RYAN, C., dissenting.

I cannot assent to certain propositions upon which it is attempted to found the rights of the appellant, and I shall now state my grounds of objection.

Whatever rights or remedies the appellant possesses depend for their validity upon a private sale made by the county treasurer to him. It is not questioned that the treasurer had no warrant from the county clerk for commanding the collection of the taxes, when, as such treasurer, he sold the land and issued to appellant a certificate evidencing such sale. In the opinion to which I take exceptions it is sought to sustain the rights of the appellant to collect the taxes as assignee under said sale on the theory, first, that the warrant is not essential to clothe a treasurer with jurisdiction to sell real estate for the non-payment of taxes which are delinquent and a lien thereon—the county treasurer's power to sell not being derived, as it is said, from the warrant, but from

sections 109 and 113 of the revenue law (Compiled Statutes, ch. 77, art. 1); second, even though the warrant is essential to a valid sale, nevertheless it is insisted that a sale without the warrant operates to transfer, by an equitable assignment, the rights of the county to the purchaser; third, from these propositions it results, as claimed, that the purchaser can maintain an equitable action for the foreclosure of the lien to which he has been subrogated by a sale made by the county treasurer without the authority of a warrant empowering him to collect taxes.

In the case of *Reynolds v. Fisher*, 43 Neb. 172, it was said: "The warrant provided for in this section is the treasurer's authority for enforcing the collection of any and each particular tax of the list to which it is attached, when it becomes necessary to resort to any of the proceedings provided by law. To collect the tax, then, the warrant must be in the hands of the collector, and, in this state, attached to the tax list, as his authorization to institute such proceedings. If he proceeds without it, he becomes a trespasser. An officer of the law who makes a levy must be empowered to do so by the proper writ in his possession. So with the treasurer. The warrant required by the law to be attached to the tax list is the source of the right to use the means of collection provided by the statutes." There does not seem to me to be any grounds on which to assume that this language is applicable alone to the seizure and sale of personal property, but such is the assumption in the opinion to which I object. This limitation is justified in that opinion on the theory that taxes on personal property become a lien on the personal property of the person assessed from the time the tax books are received by the collector, whereas the lien on real property comes into existence on the first day of April in each year, irrespective of the time of delivery of the tax list to the treasurer. In the case at bar there was no warrant attached to the tax list. To constitute a tax list, within the pur-

view of the statute, the warrant is indispensable, for
section 83, chapter 77, Compiled Statutes, is in this lan-
guage: "The tax list shall be completed and delivered
to the county treasurer on or before the first day of Oc-
tober annually, and before its delivery the county clerk
shall attach a warrant under the seal of the county,
which warrant shall be signed by said clerk, and shall, in
general terms, command the said treasurer to collect the
taxes therein mentioned according to law; but no in-
formality therein, and no delay in delivering the same
after the time above specified, shall affect the validity
of any taxes or sales or other proceedings for the collec-
tion of taxes as provided for in this act." If the warrant
is essential to constitute the tax list which justifies the
treasurer in collecting taxes, no argument can be
founded on the assumption that a sale can take place
without such warrant being attached. I am not unmind-
ful that in Iowa the tax list without a warrant has been
held the treasurer's sufficient authority for selling real
property. In the opinion herein dissented from the
proposition relied on is thus stated: "The taxes are a lien
upon the real estate from the first day of April in the
year in which they are assessed. One of the statutory
methods of enforcing and satisfying this lien is by a sale
of the property; and to effect this sale no seizure of the
property is necessary, and authority to make the sale
is conferred by express provisions of the statute. In
support of these views see *Parker v. Sexton*, 29 Ia. 421;
*Sully v. Kuehl*, 30 Ia. 275; *Johnson v. Chase*, 30 Ia. 308;
*Hurley v. Powell*, 31 Ia. 64; *Rhodes v. Sexton*, 33 Ia. 540.
Our conclusion therefore is that to invest the treasurer
with jurisdiction to seize personal property for the satis-
faction or enforcement of a tax lien thereon the warrant
provided by section 83 of the revenue law must be at-
tached to the tax list, but that the presence of such a
warrant attached to the tax list is not essential to invest
the treasurer with jurisdiction to sell real estate for the
non-payment of taxes which are due and a lien thereon;

that the treasurer's authority and jurisdiction to make such a sale is derived from the express provisions of sections 109 and 113 of the revenue act." Of the sections thus invoked section 109 prescribes when and where the county treasurer shall offer at public sale the lands on which the taxes for the previous year shall not have been paid, how the sale may be adjourned, if necessary, the notice by publication which must precede the sale, and what such notice shall contain. That I may be strictly accurate it is necessary that I should say that this section also provides for defraying the expenses of advertising, though this is immaterial to our present inquiry. Section 113 of chapter 77, Compiled Statutes, provides that after the tax sale shall have closed and the treasurer has made his return thereof to the county clerk, the county treasurer shall sell at private sale, at his office, the unsold lands, to any person who shall pay the amount of taxes, penalty, and costs, and shall issue certificates showing such sale. These certificates are to be issued in duplicate, but it is unnecessary further to describe the provisions of this section, for they merely refer to the recitations which must be embodied in the aforesaid duplicate certificates.

This abstract of these sections, upon comparison, serves to show the differences between the statutes of this state and those of Iowa, of which a synopsis is given in the opinion to which I shall now refer. *Parker v. Sexton, supra,* very properly was first in the citation of Iowa cases on this subject, for the others cited came after and followed in its wake. In the quotation which I shall now make from this case it will be noted that there is no distinction, or room for distinction, between the power to sell real and to sell personal property; and if its reasoning is to prevail in this state, it necessarily follows that *Reynolds v. Fisher, supra,* must be overruled. Again, in the statutory provisions of Iowa which we shall find noted in the opinion in *Parker v. Sexton, supra,* there are special features which have been seized upon to justify

dispensing with the necessity of a warrant, and these features have no place in our statute. I note these matters in advance, for, perhaps, some special excuse should be offered for quoting as freely as I shall, as follows: "The next question made is upon the fact * * * that the tax warrant is not attested by the official seal of the board, instead of the seal of the district court, and it is claimed that this informality renders the sale of the land void. A careful analysis of our revenue statute will show the error of this claim. Revision section 748: 'An entry shall be made upon the tax list showing what it is and for what county and year it is, and the clerk of the county board of supervisors shall attach thereto a warrant, under his hand and the official seal of said board, in general terms requiring the treasurer to collect the taxes therein levied, according to law, and no informality in the above requirements shall render any proceedings for the collection of taxes illegal. The clerk of the county board of supervisors shall cause the tax book to be delivered to the treasurer of the county by the first Monday of November and his receipt taken therefor, and such list or book shall be full and sufficient authority for the collector to collect taxes therein contained.' Now, it will be observed that by the provisions of this section the tax warrant requires the treasurer to collect, and is his authority for the collection of, the taxes in the tax list contained; but it does not authorize him to collect taxes therein named by distress and sale of personal property; nor to sell real estate; nor does it exempt him from personal liability for illegal or erroneous taxes collected by him. In short, the tax list and warrant, as provided by this section, becomes simply the authority of the treasurer to collect or receive the taxes—nothing more. And if there were no other provisions in our revenue law respecting the enforcement of the collection of taxes, this section would not authorize the seizure or sale of either personal or real property. It was directly held by this court in *Ham v. Miller*, 20 Ia. 450, that the express power

given to a city in its charter to 'provide for the assess-
ment of all taxable property' and 'to collect taxes,' etc.,
did not include the power to sell or convey real property
in case of non-payment; and this adjudication was reaf-
firmed in *Merriam v. Moody*, 25 Ia. 163, and it was therein
stated that all the adjudged cases, without exception,
were to the same effect; so that if there was nothing more
in our revenue law giving authority therefor than the tax
list and warrant as provided in this section 748, there
would be no power to either seize or sell property for the
non-payment of taxes.   It is clear, then, upon general
principles, that the power to sell does not come from the
tax warrant.   It is further provided by section 751 that
the treasurer, after making entries upon the tax list of
the delinquent taxes for the previous years, 'shall pro-
ceed to collect the taxes, and the list and warrant shall
be his authority and justification against any illegality
in the proceedings prior to receiving the list,' etc.   This,
without giving him any additional authority, simply ex-
empts him from a personal liability to which he might
otherwise be subject.   And the idea that the tax warrant
confers no other authority than merely to collect or re-
ceive the taxes finds further support in section 756: 'No
demand of taxes shall be necessary, but it is the duty of
every person subject to taxation to attend at the office of
the treasurer (unless otherwise provided) at some time
during the time mentioned in a previous section of this
act and pay his or her taxes; and if any one neglects to
pay them before the first day of February following the
levy of the tax, the treasurer is directed to make the same
by distress and sale of his or her personal property, ex-
cepting such as is exempt from taxation, and *the tax list
alone* shall be sufficient warrant for such distress.'   So
that the tax warrant is fully exhausted and its object ac-
complished when it clothes the treasurer with the au-
thority to collect the taxes; for when it comes to enforc-
ing the payment by distress and sale of personal property
the tax list alone is the authority—the tax warrant has no

connection with it. And for the sale of real property for the payment of the taxes there is an express and independent statutory command and authority found in section 763: 'On the first Monday of October in the year 1860, and in each year thereafter, the county treasurer is required to offer at public sale, at the court house or at the office of the county treasurer, all lands, town lots, or other real property on which taxes of any description for the preceding year or years shall have been delinquent and remain due and unpaid; and such sale shall be made for and in payment of the total amount of taxes, interest, and costs due and unpaid on such real property.' Section 764 directs the manner of advertisement or notice of sale, etc., and it is then provided by section 765, that 'the county treasurer shall attend at the court house in his county, or at his own office as hereinbefore provided, on the day of sale, and then and there, at the hour of 10 o'clock in the forenoon, proceed to offer for sale, separately, each tract or parcel of real property advertised for sale on which the taxes and costs shall not have been paid.' The mandate and authority for the sale of real estate for taxes are very clearly and specifically given by these provisions themselves, and that, too, without any reference to or aid from the tax warrant. The latter is simply an authority to collect or receive the taxes; the power to sell real estate is derived directly from the statute. We conclude, therefore, that whether the tax warrant in this case was attached by the clerk under the direction of the board or properly attested and sealed are questions not at all connected with the validity of the sale and cannot affect the result."

It is worthy of special note that in the above quotation of the language reproduced from section 756 there were italicized the words "the tax list alone" in the clause "and the tax list alone shall be sufficient warrant for such distress." This was a provision referring to payment of taxes by distress and sale of personal property, and I cannot reconcile this construction with what

is conceded to be the import of the opinion in *Reynolds v. Fisher, supra.* The Iowa statute, as shown by the above quotation, requires that before the tax list is intrusted to the county treasurer there shall be attached to it by the clerk a warrant requiring the treasurer to collect the taxes therein levied, according to law. In *Corbin v. Hill*, 21 Ia. 70, the opinion was prepared by Cole, J., whose language in *Parker v. Sexton, supra*, we have freely quoted. In *Corbin v. Hill, supra*, he said: "The tax warrant has the force of an execution and is the authority for the collection of many thousands of dollars and for the sale of the property and homesteads of individuals, and it is but the merest justice that the records shall show the legal authority for the person or officer issuing such process to so issue it." The author of this opinion, at its close, without giving his reasons, dissented therefrom, and in *Parker v. Sexton, supra*, disclaimed its authority as applied to the necessity of a tax warrant. The proposition that the warrant has the force of an execution and is the treasurer's authority does not rest alone on the above case, but is recognized in every other case I have been able to find involving that question, as the following citations serve to demonstrate:

In *Den v. Stewart*, 4 Dev. & B. [N. Car.] 386, there was under consideration the validity of a tax deed, and it was said: "The certified copies of the tax lists delivered by the clerk to the sheriff are, in law, his warrants of distress or executions against the property of each individual for the satisfaction of the money due on them. If there is no personal property to be found, the sheriff is to distrain the land and, after advertising the same as the law directs, and also performing the duties prescribed by the act of 1819 (1 Revised Statutes, ch. 102, secs. 52, 53), he will sell the same, or so much thereof as shall be sufficient for the payment of the taxes due and the costs of the sale. It seems to us, therefore, that until it be shown by competent evidence that a specific tax has been legally ascertained to be due, the authority of

the sheriff to sell for a tax does not appear; and as his sale can operate to transfer title only by force of his authority, unless that be shown, his deed passes no estate."

In *Gossett v. Kent,* 19 Ark. 602, a bill in chancery had been filed for the cancellation of a tax deed because of certain irregularities in the proceedings leading up thereto, and in respect to the question under consideration English, C. J., for the court, said: "The county court, after correcting any errors that may be made to appear in the assessment list returned by the assessor, causes to be stated thereon the state and county tax to be collected from the persons and property embraced in the list; and distinguished into the two classes above indicated. (Sec. 35.) The process of assessment, thus completed by the action of the county court, becomes, it is said, in the nature of a judgment. (Blackwell, Tax Titles 199.) The tax book, which is but a copy of the assessment list thus perfected, is then delivered to the collector (secs. 35, 36), attached to which is a process in the nature of an execution. (Sec. 40.)" It was held in this case that the liability of the land to sale was to be determined by the conditions existing when the warrant and tax list went into the hands of the sheriff, and not by a circumstance which afterward arose—in this case the departure of the owner of the property into another state.

*Hannel v. Smith,* 15 O. 134, was an action of ejectment brought by the holder of a tax deed. The tax sale had been conducted under the authority of the following statutory provision: "The auditor of state, at the time he transmits the county duplicate for the year 1831 to the several county auditors, shall also transmit to each county auditor a list of the forfeited lands lying in such county, which list shall set forth the name or names of the person or persons to whom such lands stand charged with taxes, the amount due thereon for each year, including the year 1831, and for what years, and shall certify and sign said list and affix thereto the seal of his office." The certificate which it was contended fulfilled the above requirements was as follows:

"AUDITOR OF STATE'S OFFICE,

"COLUMBUS, OHIO, June 5, 1843.

"*Auditor of Hamilton County:* You will carefully examine the foregoing list and strike from it all such lands as you may know to be erroneously forfeited, taking care that none escape the. duplicate of taxation.   You will then proceed to advertise and sell the remainder, according to the original act for the sale of forfeited lands and the amendatory act passed February 15, 1842, etc.

                    "JOHN BROUGH,
                        "*Auditor. of State.*
                "By J. B. THOMAS."

In the discussion of this certificate it was said in the opinion of the court delivered by Hitchcock, J.: "It is apparent from this document that it was annexed to a list, called a list of forfeited land, but it was not such a verification of that list as the law required.    *    *    * This instrument is not only without the signature of the auditor, but it is not verified by his official seal, nor is it therein certified that the list to which it is attached is correct.   It is defective, and would no more authorize the county auditor to sell the land contained in the list than a letter written by a clerk of a court and directed to a sheriff, informing him that a judgment had been rendered in a certain case, would authorize that sheriff to levy upon and sell the lands of a judgment debtor."

In *State v. Woodside*, 8 Ired. [N. Car.] 104, it was said: "To enable the sheriff to enforce by distress the collection of the taxes. from the individual who has given in his property as required by law, he must be provided with a copy of the returns in the office of the clerk, duly certified by the clerk, that the taxpayer may see the amount which he is bound to pay; otherwise he may refuse to pay and the sheriff cannot distrain his property.   The certified copy is his warrant of distress to collect the taxes (*Slade v. Governor*, 3 Dev. [N. Car.] 365; *Kelly v. Craig*, 5 Ired. [N. Car.] 131), and it is the duty of the sheriff to apply to the clerk in proper time for such a copy."

In *Hilbish v. Hower*, 58 Pa. St. 93, it was said, on the authority of *Pearce v. Torrence*, 2 Grant [Pa.] 82, and *Stephens v. Wilkins*, 6 Barr [Pa.] 260, that the authority of a collector of taxes to collect is his warrant, and that without a warrant the collector becomes a trespasser as soon as he meddles with the property of a taxpayer. This case involved the validity of a seizure and sale of personal property, but the above principles were stated without qualification or limitation.

In *Van Rensselaer v. Witbeck*, 3 Seld. [N. Y.] 517, it was held that, as the warrant to the collector consists in part of the assessment roll, of which the property certificate is a necessary element, the want of the latter is a defect apparent upon its face and renders the process no protection to the officer.

. The case of *Donald v. McKinnon*, 17 Fla. 746, was ejectment, wherein plaintiff claimed title through a tax sale as well as under a judicial sale. To invalidate the tax deed there was an offer on the trial to show by one Gamble, the tax collector of the revenue, that there was no warrant attached to the assessment roll under which the tax sale was had. This evidence was excluded. In the discussion of the admissibility of this evidence the court said: "The law requires that to the assessment roll delivered to the collector of revenue a warrant under the hand of the assessor should be annexed in the following form, to-wit [giving the form, etc.]. Without this warrant 'delivered by the officer of the law designated for that purpose, the collector has no authority to proceed to enforce the payment of taxes.' This being omitted, the performance of all other acts, such as due advertisement, will lay no foundation for the sale of land. (*Kelly v. Craig*, 5 Ired. [N. Car.] 131; *Van Rensselaer v. Witbeck*, 7 N. Y. 517; *Homer v. Cilley*, 14 N. H. 85; Hilliard, Taxation 396; Cooley, Taxation 292; Blackwell, Taxation 167.) The warrant in this proceeding fills the place and performs the functions of a summons. It is the writ to the officer by which he is authorized for public pur-

Grant v. Bartholomew.

poses to collect the tax, or, in the event of its non-payment, to subject the property to sale. For this reason we think the court erred in rejecting the proposed testimony of Gamble, the person who at the time of the sale was the collector of revenue and who proposed to produce the assessment roll." If the warrant is equivalent to, and fulfills the purpose of, an execution, as seems to be quite uniformly held, the mere fact that the tax is a lien on real property, and may be satisfied by a sale thereof, no more authorizes a treasurer to sell without a warrant than would the fact that under the provisions of sections 476 and 477, Code of Civil Procedure, lands are subject to be sold, and are under the lien of a judgment, authorize a sheriff, without an execution, to sell such lands. I have found no case going even as far as those from Iowa, and, as already intimated, I do not assent to the proposition that even they sustain the construction attempted to be placed upon our statute.

The second proposition to which I cannot yield assent is that upon the theory of an equitable assignment, independently of the authority of a warrant, appellant was subrogated to the rights of the county with respect to maintaining an action for the recovery of the taxes which he had paid. The cases cited to show that where a sale which failed to confer title nevertheless operated to subrogate the purchaser to the rights of the county were abortive sales, by reason of some defect in the procedure and not from lack of jurisdiction. It may be urged that the failure to attach the assessor's oath to his assessment is not a mere irregularity, but as directly impairs the jurisdiction as does the failure to accompany the tax books with a warrant to the treasurer. To my mind there is, between these a clear distinction as to the office of these instruments. The warrant is the treasurer's sole authority to act, while the oath of the assessor is merely evidence of the correctness of the assessment. The assessment is essential to enable the board of supervisors to levy the taxes to be collected. It is a matter

of evidence upon which that board exercises its judgment for the purpose indicated. After the assessment has been acted upon, the inquiry as to whether or not there was due proof of the correctness of the assessment when the board acted upon it becomes, not an inquiry into a jurisdictional, but into an evidential fact. The attack upon a sale subsequently made draws into question, in a sort of collateral way, the sufficiency of the proofs upon which the board acted. As to the warrant by virtue of which the treasurer conducts the sale the inquiry is as to a jurisdictional fact, which, as I understand it, is always open to question. In all of the cases cited there is not to be found one which upholds the doctrine that where the treasurer was entirely without jurisdiction his acts, nevertheless, operated to confer rights upon the purchaser. If one may assert rights with respect to taxes merely because he has voluntarily paid them to one who has no authority to coerce payment, this will be the only direction in which the law encourages and rewards this sort of intermeddling, and I see no justification for such a departure from a universally accepted principle.

Upon the proposition that when a special remedy is given by statute there can be no resort to the courts unless this course be expressly authorized, I have not felt called upon to invoke the decisions of the tribunals of states other than this. The doctrine was enforced in a tax case, *Richards v. County Commissioners, Clay County*, 40 Neb. 45, wherein it was said of section 89, chapter 77, Compiled Statutes: "It will be observed that the section quoted authorizes actions in three cases only: First, where no personal property of the delinquent can be found, the treasurer or town collector, when directed so to do by the commissioners or supervisors, may commence an action in the district court of the county where the tax is levied; secondly, if any person having personal property assessed shall, in the opinion of the treasurer or town collector, be about to remove out of the county,

or in any other manner seek to put his personal property out of the reach of the treasurer or collector, the treasurer and collector shall collect such taxes by distress or attachment, as the case may require; and, thirdly, if any person owing taxes remove, the treasurer and town collector shall forward such tax claim to the treasurer or tax collector at the adopted residence or place of abode of such taxpayer, where the taxes may be collected by distress or civil action. In the last case the treasurer or tax collector to whom such claim is forwarded is authorized to institute the action in the name of the commissioners or supervisors of the county from which such tax claim was forwarded. No other provisions for suit are found. This case is not within any of these classes." In the case just quoted from the attempt was to attach property subject to taxes in Clay county after its removal to York county, under the authority of the general statutory provisions governing such proceedings, but this right was denied for the reasons above indicated. This doctrine, that where special remedies are given for the enforcement of rights, no resort can be had to general provisions or the protection of those rights, has been repeatedly enforced in the jurisprudence of this state. (See authorities cited in *Richards v. County Commissioners, Clay County, supra, Keith v. Tilford,* 12 Neb. 271, *Reynolds v. Fisher, supra,* and *German-American Fire Ins. Co. v. City of Minden,* 51 Neb. 870, with the cases therein referred to.)

In the outset I stated the propositions in which I could not concur, and have given reasons which, I think, justify my dissent. It would be alike useless to recapitulate these propositions and the arguments to sustain them. To me they are sufficiently convincing to prevent my concurrence in the opinion which is to determine this appeal; hence I do not feel called upon to express my views with reference to other propositions than those which should be determinative of this case.

HARRISON, C. J., and IRVINE, C., concur in this opinion.