## W. H. REYNOLDS v. ALLEN G. FISHER ET AL.

### FILED JANUARY 2, 1895.   No. 6892.

1. **Taxes: COLLECTION.** The warrant required by law to be attached to a tax list when it is delivered to a county treasurer for collection is the source of his power and authority to resort to the proceedings provided by statute for enforcing the collection of the taxes when it becomes necessary so to do.   If no warrant is so attached he lacks the authority to compel the payment of the taxes.

2. ———: ———: **AUTHORITY.** Where the tax list was prepared by the county clerk by transcribing the assessment into two books and the warrant directing the treasurer to collect the taxes contained in the list was attached to but one of the books, and it was admitted that the two books constituted the tax list for the year, the warrant attached to the one book was a sufficient authorization to the treasurer to collect any taxes in the list as shown in either book, in any manner provided by law.

3. ———: **LIEN: EXTENT.** The taxes assessed on personal property are not confined as a lien to the property upon which they are assessed, but are a lien upon all personal property owned by the person assessed, during the existence of the taxes, from and after the delivery of the tax list to the county treasurer for collection.

4. ———: ———: **ENFORCEABLE BY REPLEVIN.** The county treasurer is ordinarily restricted in the enforcement of the collection of taxes to the use of the remedies provided by statute, but where, as in this case, the taxes are a lien on the property and he seeks to gain possession by virtue of such lien and the property is in the possession of other parties who claim the right of possession and contest the treasurer's right to take the property, the legislature having failed to provide any means or remedy, the right to resort to the proper legal proceeding is implied, and replevin being the proper action, he may maintain such an action and have his right to possession adjudicated.

5. ———: ———: **PRIORITY.** The lien of the taxes *held* superior in this case to the liens created upon the property by chattel mortgages executed subsequent to the delivery of the tax list to the county treasurer.

ERROR from the district court of Dawes county.   Tried below before KINKAID, J.

*Thos. L. Redlon,* for plaintiff in error, cited : Consolidated Statutes, 1891, sec. 4038; *Wygant v. Dahl,* 26 Neb., 572; *Hill v. Palmer,* 32 Neb., 632; *Boyce v. Stevens,* 49 N. W. Rep. [Mich.], 577; *Barker v. Morton,* 19 Ind., 146; *Evans v. Bradford,* 35 Ind., 527 ; *McNeil v. Farneman,* 37 Ind., 203; 2 Desty, Taxation, p. 776; *Virden v. Bowers,* 55 Miss., 1; *Clifton v. Wynne,* 80 N. Car., 145.

*Albert W. Crites, contra,* cited : *Richards v. Clay County,* 40 Neb., 45; Cooley, Taxation, 435; *City of Carondelet v. Picot,* 38 Mo., 125; *Andover & Medford Turnpike Co. v. Gould,* 6 Mass., 40; *Miller v. Anderson,* 47 N. W. Rep. [S. Dak.], 957 ; *Bibbins v. Clark,* 57 N. W. Rep. [Ia.], 884.

HARRISON, J.

On August 1, 1893, the plaintiff commenced an action of replevin against defendant before a justice of the peace in Chadron precinct, Dawes county, to obtain possession of certain goods and chattels, claiming such possession as county treasurer of Dawes county, under and by virtue of the statutory lien on personal property for taxes assessed upon personalty as provided in section 139, chapter 77, Compiled Statutes, 1893, which is as follows: "The taxes assessed upon personal property shall be a lien upon the personal property of the person assessed, from and after the time the tax books are received by the collector." From an appraisement of the property made at the time of the service of the writ of replevin it appeared that the property taken under the writ exceeded in value the sum of $200. The case was therefore transferred to the district court, where, after some preliminary motions, etc., the cause was submitted to the court for adjudication upon the following stipulation of facts :

"1. The plaintiff is now the elected, qualified, and acting county treasurer of said county, and has been such officer since the first Tuesday after the first Monday of January, 1892.

"2. That on the 1st day of April, 1891, and on the 1st day of April, 1892, Roderick McLeod was the owner of a large stock of merchandise, consisting of boots and shoes, furnishing goods and groceries, as well as the furniture and fixtures of his store-room, which said goods he was daily retailing to customers in the city of Chadron, and replacing from time to time by new goods.

"3. That said stock of goods was listed and assessed for taxation on April 1 of said years 1891 and 1892, and taxes were levied thereon to the amount as follows: 1891, $96.87, and for 1892, $64.29, which taxes became delinquent on the 1st day of February, 1892, and the 1st day of February, 1893, if at all. That the tax list of 1891 was delivered to the treasurer of Dawes county on or about October 1, 1891, but that no warrant was attached thereto by the county clerk.

"4. The county clerk prepared the tax list of 1892 in two separate books, one containing the personal property and the city and village real taxes, and the other the county real estate taxes, and delivered them to said treasurer about the 5th day of January, 1893.

"5. That no warrant was attached to or written in the book containing the personal taxes and city and village real tax for the year 1892, commanding said treasurer to collect the same, but a warrant was attached to the book containing the county real estate tax, a copy of which warrant is hereto annexed, marked 'Exhibit A,' and made a part hereof.

"6. That a decree was duly entered in the district court of Dawes county, Nebraska, in December, 1892, wherein W. H. Reynolds, plaintiff herein, and James C. Dahlman and others were defendants, a true copy of which decree is hereto attached, and marked 'Exhibit B,' and made a part hereof.

"7. That on the 19th day of July, A. D. 1893, Roderick McLeod executed and delivered to the First National

Bank of Chadron his chattel mortgage for a valuable consideration by him in hand received, whereby he conveyed to said bank a certain defined portion of said stock of merchandise of the value of $700, and upon the same day delivered the possession of said goods to the said bank, and said goods were, upon the succeeding day, July 20, 1893, removed from the store-room wherein said stock was situated at the date of said mortgage, which was given to secure a *bona fide* indebtedness owing from McLeod to said bank.

"8. That on said 19th day of July, 1893, said McLeod, for a valuable consideration before received by him from C. M. Henderson & Co., executed and delivered to them a chattel mortgage, which was accepted and filed in the office of the county clerk of Dawes county, Nebraska, the same day, a true copy of which chattel mortgage, together with file mark thereon, is hereto attached and made a part hereof, and marked 'Exhibit C,' and immediately delivered the possession of said goods to the defendant Allen G. Fisher, as agent for the said mortgagee, who received possession thereof and accepted the same under the said chattel mortgage, as agent for the said mortgagees, and no portion of said goods has been removed from said building by any person except as hereinafter stated.

"9. That on the said 19th day of July, 1893, said McLeod, for a valuable consideration before received by him from Large & Amsden, executed and delivered to them a chattel mortgage, which was accepted and filed in the office of the county clerk of Dawes county, Nebraska, the same day, a true copy of which chattel mortgage, together with file mark thereon, is hereto attached and made a part hereof, and marked 'Exhibit D,' and immediately delivered the possession of said goods to the defendant Allen G. Fisher, as agent for said mortgagees, who received possession thereof and accepted the same under the said chattel mortgage, as agent for the said mortgagees, and no portion of said goods has been removed from said building by any person except as hereinafter stated.

"10. That on the said 19th day of July, 1893, said Mc-
Leod, for a valuable consideration before received by him
from Tootle, Hosea & Co., executed and delivered to them
a chattel mortgage, which was accepted and filed in the
office of the county clerk of Dawes county, Nebraska, the
same day, a true copy of which chattel mortgage, together
with the file mark thereon, is hereto attached and made a
part hereof, and marked 'Exhibit E,' and immediately de-
livered the possession of said goods to the defendant Allen
G. Fisher, as agent for said mortgagees, who received
possession thereof and accepted the same under the said
chattel mortgage, as agent for said mortgagees, and no
portion of said goods has been removed from said building
by any person except as hereinafter stated.

"11. That on the 19th day of July, 1893, said McLeod,
for a valuable consideration before received by him from
the American Hand-Sewed Shoe Company, executed and
delivered to them a chattel mortgage, which was accepted
and filed in the office of the county clerk of Dawes county,
Nebraska, the same day, a true copy of which chattel
mortgage, together with the file mark thereon, is hereto at-
tached and made a part hereof, and marked 'Exhibit F,'
and immediatly delivered the possession of said goods to
defendant Allen G. Fisher, as agent for said mortgagees,
who received possession thereof, and accepted the same un-
der the chattel mortgage, as agent for the said mortgagees,
and no portion of said goods has been removed from said
building by any person except as hereinafter stated; that
said C. M. Henderson & Co. is an Illinois corporation,
duly incorporated and existing, and the American Hand-
Sewed Shoe Company is a Nebraska corporation, duly in-
corporated and existing, and Large & Amsden and Tootle,
Hosea & Co. are each partnerships and both engaged in the
business of wholesaling boots and shoes; that said Allen G.
Fisher, as agent of the above mentioned mortgagees, re-
mained in actual, exclusive, and undisputed possession of

said stock of goods, except only the goods mortgaged to the First National Bank, which were removed by the said bank (out of said building) from the time of delivery of said mortgages, and the goods mortgaged therein, on July 19, 1893, until the afternoon of July 21, 1893, when the sheriff, with a writ of replevin in this action, gained admission into said building, wherein said goods were in the possession of the defendant Fisher, and took them and carried them away pursuant to said writ.

"12. That when the said chattel mortgages were executed and delivered, and the goods therein described were delivered and possession thereof received and taken under said mortgages pursuant thereto, neither of the defendants, nor C. M. Henderson & Co., nor Tootle, Hosea & Co., nor the American Hand-Sewed Shoe Company, were given or had any actual notice or knowledge of said taxes, and had no notice thereof save such as the law might imply from the records of the district court of Dawes county, Nebraska, and in the offices of the county clerk and treasurer.

"13. That after said mortgages were made and received and the possession of the goods therein described received thereunder the defendant Fisher, as agent for the said mortgagees, the county treasurer, by virtue of his office as county treasurer, for the purpose of collecting the taxes above mentioned, demanded payment thereof from the said Roderick McLeod, and no portion thereof was paid; that the said mortgagor's indebtedness still remains in full force and unpaid.

"14. That before beginning this suit plaintiff demanded possession of the goods, for the purpose of collecting said taxes, which was refused by defendants.

"15. That soon after such demand and refusal the county treasurer, as plaintiff, brought this action against the defendants before D. Y. Mears, Esq., a justice of the peace of said county, to recover possession of said goods for the

16

purpose of collecting said taxes, for the reason and upon the grounds stated in the affidavit in replevin herein, and under the writ of replevin herein seized said goods, then in the hands of said defendant under said mortgages, which goods so taken in replevin herein are of the agreed value of $606.40, and were so taken in replevin on the 21st day of August, A. D. 1893.

"16. The party adjudged to have title and right to possession on the foregoing facts shall recover six cents damages and costs of suit.

"And it is further stipulated and agreed that this cause shall be decided on the foregoing facts, and that if the losing party shall desire to have a bill of exceptions allowed for the purpose of prosecuting error in the supreme court, this stipulation of facts contains all the evidence in this suit, and the same shall be settled and allowed as a bill of exceptions, and made a part of the record by the clerk of the district court."

The court made a finding in favor of defendants and rendered judgment accordingly, motion for new trial was submitted and overruled, and the case has been removed to this court by petition in error.

It is stated in paragraphs 3, 4, and 5 of the stipulation of facts "that the tax list of 1891 was delivered to the treasurer of Dawes county on or about October 1, 1891, but that no warrant was attached thereto by the county clerk;" that in preparing the tax list for the year 1892, which was to be delivered to the treasurer, the assessments of the personal property and the city and village real estate were transcribed into one book, and the assessments of county real estate into another, and no warrant was attached to or written in the book containing the list of personal and city and village real estate taxes. Section 80 of chapter 77, entitled "Revenues," Compiled Statutes of 1893, which refers to the tax list and its preparation, is as follows: "After the equalization by the county and

state boards, as hereinbefore provided, and the levy of taxes made by them, and before the first day of October, the county clerk shall transcribe the assessments of the several precincts, townships, cities, or villages into a suitable book to be provided at the expense of the state, properly ruled and headed with distinct columns, in which shall be entered the description of lands, number of acres and value, number of city and village lots and their value, value of personal property, and each description of tax, with a column for polls, one for payment, and a number of columns for delinquent taxes of previous years;" and section 83 of the same chapter provides as follows: "The tax list shall be completed and delivered to the county treasurer on or before the first day of October annually, and before its delivery the county clerk shall attach a warrant under the seal of the county, which warrant shall be signed by said clerk and shall in general terms command the said treasurer to collect the taxes therein mentioned according to law; but no informality therein and no delay in delivering the same after the time above specified shall affect the validity of any taxes or sales, or other proceedings for the collection of taxes as provided for in this act." The warrant provided for in this section is the treasurer's authority for enforcing the collection of any and each particular tax of the list to which it is attached when it becomes necessary to resort to any of the proceedings provided by law. To collect the tax, then, the warrant must be in the hands of the collector, and, in this state, attached to the tax list, as his authorization to institute such proceedings. If he proceeds without it, he becomes a trespasser. An officer of the law who makes a levy must be empowered to do so by the proper writ in his possession. So with the treasurer. The warrant required by the law to be attached to the tax list is the source of the right to use the means of collection provided by the statutes. (Cooley, Taxation, 292; 25 Am. & Eng. Ency. of Law, 292, and

cases cited.) As there was no warrant attached to the tax list for 1891, the treasurer had no right to enforce the collection of the personalty tax for that year, by distress or other proceedings provided by the statutes in relation to taxes and their collection. We are not deciding that the tax list for 1891 was invalid, or that the collector could not legally receive voluntary payments of taxes and retain them. There is some argument to this effect in the brief filed, but we do not think that it is one of the points arising from the facts contained in the record as presented here, hence we do not consider nor adjudicate it. The statement in the stipulation of facts is that "the county clerk prepared a tax list for 1892 in two separate books," did not transcribe the assessments into one book as the law prescribes, but used two books and only attached the warrant which ordered the county treasurer to collect the taxes contained in the list to one book, and it is claimed that this did not empower him to collect the taxes set forth in the one book which it is admitted was a portion of the list. It is not contended that there was anything wrong with any portion of the list, nor even that there was any irregularity in its preparation, and it is conceded, or admitted, that the two books taken together constituted the tax list for 1892. While no doubt it would have been the proper practice to have followed the directions contained in the law and placed all assessments in one book, if possible to do so, or probably to obviate any objection, if written into more than one book, to have attached a warrant to each book, yet we think that attaching the warrant to the one book of the two which contained the tax list in this case was sufficient to authorize the treasurer to proceed with the collection of the taxes. The taxes were not illegal, nor assessed for an unauthorized purpose, and their collection not harmful nor detrimental to the rights of any person against whom they were legally a charge or to whose claims or liens upon any property they were superior. The treasurer in this case

was asserting his rights to the possession of this property, for the purpose of subjecting it to sale and applying the proceeds to the payment of the taxes assessed not against the defendants in the replevin suit, but against O'Connor Bros., from whom the defendants had received the goods under and by virtue of chattel mortgages, as set forth in the stipulation of facts herein, and his right to such possession was based in part upon his power to take such goods and sell them, contained in the warrant attached to the tax list and in part as being superior to the rights of defendants by virtue of the lien of the taxes upon the property, created by section 139, chapter 77, Compiled Statutes, 1893. The tax list in question was delivered to the treasurer about January 5, 1893, and from and after that time became a lien upon the property of O'Connor Bros., not necessarily upon the property assessed alone, but upon all the personal property of which they were the owners after the delivery of the tax list to the treasurer. (*Hill v. Palmer*, 32 Neb., 632.)

There has been some considerable discussion in the courts over the question of how far a lien on personalty for taxes, such as is contemplated by the foregoing section of our law, can be, or ought to be, sustained, the opposition to it being based mainly upon the proposition that it is against public policy, in that to enforce it would interfere with the due course of trade, and it has been said that it will not be allowed to prevail as against purchasers in the regular course of business, but this is not the point presented in this case. Here we are to decide as between the lien for taxes and the liens created by chattel mortgages, executed after the tax list had been made and delivered to the treasurer. There can exist no doubt of the intention of the law-makers, in the section quoted, to create the lien. It is expressed in unmistakable terms, and if held inferior and subject to all and any transfers by way of mortgage or lien, or liens created by levy of process subsequent to its creation by the

delivery of the tax list to the treasurer, then do we all but destroy it. It may be said that it does not become operative until the treasurer has taken the property into his possession, but we cannot think so. If such had been the intention, the treasurer could as well have been left to his remedy by distraint, which would have been fully as efficacious without this provision for a lien. As between the liens created by the execution of the chattel mortgages and the statutory lien for the taxes, we are satisfied the one for taxes was prior and superior and entitled to be first satisfied from the property in controversy, and the treasurer entitled to possession by virtue of the lien and the command of his warrant of collection. Having reached the conclusion that the treasurer had a lien upon the property in controversy and one which was a superior lien, we are confronted with the question, could the treasurer maintain an action of replevin to recover the possession of the goods? Counsel call attention to the fact that our revenue laws contain a provision for the collection of taxes by distress and, in addition to this, by suit or action, and contend that no other or different action will lie, or method can be employed than those provided, and cites, with other cases, that of *Richards v. Commissioners of Clay County,* 40 Neb., 45, a late decision by this court, with the doctrine of which, in its general application to the facts and circumstances of the case in which it was announced, we then agreed and do now. It was held in the case cited: "Taxes are not debts in the ordinary acceptance of the term, and generally an action at law will not lie for their collection. While the right to an action may be implied from the failure of the legislature to provide any means for enforcing the payment of taxes, yet, where the legislature has provided means of enforcing payment, that remedy is exclusive." The legislature has provided the means of subjecting the property to the payment of the taxes, and has further enacted that they shall be a lien on certain property, and the treasurer in

this case sought to bring into action one of the means given him by law for collection, and in order to do so was forced to assert and enforce his right to priority for such purpo-e, by virtue of his lien, and the legislature having failed to point out the manner in which the superiority of his lien might be determined, or to provide an action by which the right to possession might be established, we think the usual and ordinary remedy in such cases, that of replevin, could be resorted to by him, as its use is clearly imp ied by such failure.    It follows that the judgment of the district court must be reversed and the cause remanded.

REVERSED AND REMANDED.