CHAMBERLAIN BANKING HOUSE V. WILLIAM H. WOOLSEY ET AL.

FILED SEPTEMBER 19, 1900. No. 9,162.

1. **Taxes:** NAME OF PARTIES: PRIMARY EVIDENCE: ASSESSMENT ROLL: TAX SCHEDULE. The primary evidence of the name of parties against whom taxes are assessed is the "assessment roll," or tax schedule required to be signed and verified by the party assessed.

2. **Clerical Error:** CORRECTION: STATUTE. Where, in transcribing assessments to the "assessor's return" or assessment book, a clerical error is committed in the name of a party assessed, the same may be corrected without notice to the tax debtor, as in the case of errors in assessments provided for by section 1, article 2, chapter 77, Compiled Statutes, entitled "Revenue."

3. **Entry of Assessment:** PRESUMPTION. Assessments being regularly entered on the assessment books of the county, the presumption is that public officers do their duty and corrected an error or irregularity, if one existed, in the manner provided by law.

4. **Statutory Lien.** A statutory lien for taxes due exists upon all personal property of the tax debtor from and after the tax lists are made and delivered to the county treasurer.

5. ——: CHATTEL MORTGAGE: ANTEDATE: SUPERIOR LIEN. A lien for taxes upon the property of the tax debtor is inferior to that of a chattel mortgage lien antedating the time the tax lien attaches.

6. **Burden of Proof:** ALLEGATION IN PLEADING. The *onus probandi* is on the plaintiff to prove the material allegations of the petition not admitted in the answer by a preponderance of the evidence.

7. **Sale of Mortgaged Property:** TRANSFER OF DEBT: NEW NOTE: PAYMENT: PRESUMPTION. Where, in a transaction involving the sale of mortgaged personal property, the debt is transferred to the purchaser thereof, and a new note and mortgage are executed, the note evidencing the original indebtedness being canceled and surrendered, the presumption of law is that the execution and delivery of the new note and mortgage is in payment and satisfaction of the prior indebtedness, and the burden is on the creditor to prove to the contrary.

8. ——: ——: ——: ——: ——: RETENTION BY CREDITOR: PAYMENT: EXPRESS AGREEMENT. Where, in such transaction, the note and mortgage evidencing the prior indebtedness are retained by the creditor, and a new note and mortgage taken for the amount due on the same indebtedness, the taking of such new note and mortgage will not effectuate payment of the prior indebtedness, unless there is an express agreement of the parties that such new note and mortgage were received in payment and satisfaction of such prior indebtedness.

9. **Instruction.** Instruction examined, and *held* not to state the law correctly.

10. ——. An instruction submitting to the jury as an issue of fact a question material to the case, regarding which there is no evidence to support a finding, is erroneous.

11. **Distress Warrant:** LEVY BY SHERIFF: CHATTEL MORTGAGE LIEN. Where a sheriff levies distress warrants for delinquent taxes for several years upon property of the tax debtor, upon which a valid chattel mortgage exists, the seizure and sale of the property is wrongful and unauthorized to the extent and for the years the mortgage lien is prior and superior to the lien for delinquent taxes.

ERROR to the district court for Johnson county. Tried below before LETTON, J. *Reversed.*

*M. B. C. True* and *S. P. Davidson,* for plaintiff in error.

*Thomas Appelget* and *Frederick Shepherd, contra.*

HOLCOMB, J.

An action of trespass was begun by plaintiff in error against the defendant Woolsey, as sheriff, and the sureties on his official bond, for the alleged wrongful seizure and conversion of certain chattel property on which plaintiff claimed a lien by virtue of certain chattel mortgages thereon, then held and owned by it. The petition charges, in substance, that on September 1, 1892, one Zutavern was the owner of certain chattel property, being a part of a certain livery stock, and that on said date he sold said property to one Rowcliffe and Paine, who executed and delivered to the seller their promissory note for part of the purchase price, and a chattel mortgage on said property to secure the same. The said note and mortgage were sold and delivered to the plaintiff by the payee, Zutavern; that afterwards and on November 1, 1892, the said Paine sold his interest in said property to one Cummins, and in the transaction a new note and mortgage, of the same date and for the same amount and on the same property as the original one, were executed by Rowcliffe and Cummins to the original payee, and by him transferred to the plaintiff, the first note being surrendered, and the mortgage securing the same remaining unreleased and uncanceled; that on July 24, 1894, the said Cummins sold his interest in said property to the said Rowcliffe, and in the said transaction a note for the amount then due, secured by a mortgage on the same property, was executed by the said Rowcliffe and indorsed and transferred to the plaintiff, the plaintiff retaining the said note and mortgage executed by Rowcliffe and Cummins, the debt and lien thereby created being unpaid and unsatisfied; that in the several transactions referred to, the transfer and mortgaging of said property were simultaneous acts, and the original indebtedness was never satisfied, and the mortgage lien created by the several mortgages remained unreleased and in full

force and effect; that on July 8, 1895, the treasurer of Johnson county issued his distress warrants for delinquent taxes for the years 1891, 1892, 1893 and 1894, due from the said Rowcliffe, and a distress warrant for delinquent taxes for the year 1893, due from the said Rowcliffe & Cummins, and delivered the same to the defendant sheriff for execution; that the said defendant sheriff, by virtue of his office, pretended to levy said distress warrants on said chattel property as the property of the said Rowcliffe, and Rowcliffe and Cummins, then in possession of the said plaintiff under its said chattel mortgages, which were then in process of foreclosure by advertisement and sale, and wrongfully, forcibly and unlawfully seized said property and converted the same to his own use. It is also alleged that there was no valid assessment of taxes for the year 1893 against the said Rowcliffe and Cummins. It is alleged that the tax lists of Johnson county were delivered to the county treasurer for the respective years for which the assessments were made as follows: September 27, 1891, September 14, 1892, October 15, 1893, and October 11, 1894. It is alleged that other property in said county was, during all of said time, held by said Rowcliffe and Cummins out of which said taxes could have been satisfied. The answer admits the corporate character of the plaintiff, the official character of the principal defendant, and that the others were the sureties on his official bond, and the issuance of the distress warrants directed to the sheriff, and the levy of the same by him on certain property to satisfy said distress warrants, and denies the other allegations of the petition. A trial on these issues to the court and jury resulted in a general verdict for the defendants.

It is urged that the assessment against Rowcliffe and Cummins for the year 1893 is void for irregularity in the manner of levying the same. This contention is based on the assumption that no assessment was levied against the parties named, but against Rowcliffe & "Carmen," and that the error in the name of the party assessed has

not been corrected in the manner provided by law. To this proposition we do not agree. As we understand the testimony, it is proven by the "assessment rolls" that the assessment was against Rowcliffe and Cummins, the parties against whom it purports to be. This "assessment roll" or schedule is the primary evidence of the assessment actually made, and is required to be signed and verified by the party assessed. The assessment was, therefore, correctly made, and in the correct name of the party assessed.

It is also testified that in the "assessor's return" (assessment book) the name appears as "Rowcliffe & Carmen." This might be considered an immaterial misnomer only. At most, it is only a clerical error on the part of the assessor in making his return from the "assessment rolls," and is subject to correction without notice to the tax debtor, as in the case of errors in assessment provided for by section 1, article 2, chapter 77, Compiled Statutes, entitled "Revenue." Furthermore, the assessment being regularly entered on the assessment books of the county, the presumption of law is that public officers did their duty and corrected the error or irregularity, if one existed, in the manner provided by law. The tax referred to appears to have been legally assessed and is a valid obligation against the persons to whom it is charged.

The paramount question in the case involves the determination of the priority of liens; one, the chattel mortgage lien of the plaintiff, and the other the statutory tax lien upon property of the tax debtor. The principal contention of the plaintiff is that from the time of the creation of the first lien on the property in dispute, September 1, 1892, it has held a valid, subsisting and superior lien to that of any lien for taxes created by statute. It is contended that the lien created by the first mortgage was not extinguished by the transactions subsequently had with reference to the different sales of the property mortgaged, consequently no prior tax lien could attach

to the property thus mortgaged, and as against the plaintiff the seizure was unauthorized and unlawful. The defendant, to the contrary, urges that because of the subsequent transactions respecting the sale of the property and the execution of new notes and mortgages securing the same, the liens created by the first and second mortgages on said property were extinguished, and the tax lien therefore became effective and superior to the lien of the plaintiff. Under the law of this state it is now settled that a statutory lien for taxes due exists upon all personal property of the tax debtor from and after the time the tax lists are made and delivered to the county treasurer. *Farmers Loan & Trust Co. v. Memminger*, 48 Nebr., 17; *Reynolds v. Fisher*, 43 Nebr., 173. In the case at bar, applying the foregoing rule, if the first mortgage was at the time of the levy of the distress warrants a valid and subsisting lien, no tax lien could attach to the property of the said Rowcliffe, or Rowcliffe and Cummins, included in said mortgage, save, perhaps, the taxes for the year 1891. If, however, as contended by the defendants, the original debt as well as the security for the payment of the same were satisfied and extinguished by the subsequent transactions to which reference has been made, then a tax lien for the taxes assessed against the said Rowcliffe, and Rowcliffe and Cummins, for the years prior to the last transaction would attach, and the plaintiff's lien, by virtue of the mortgage last taken, would become subsequent and inferior to the tax lien for each year delinquent prior thereto. It therefore becomes material to inquire how the plaintiff's claim to the property in dispute under the first mortgage and his lien thereon is affected by reason of the subsequent transactions wherein the property mortgaged, or an interest therein, was sold to other parties, and a new note and mortgage executed to secure the amount due on the original indebtedness; and likewise, how the second lien thus obtained was affected by the transaction involving the execution of the third note and mortgage.

In the trial of the case, after the submission of evidence, the court, after stating the issues, instructed the jury upon the point referred to as follows:

"5. The plaintiff claims that it has håd a valid lien upon all of said property ever since the first day of September, 1892, by virtue of a chattel mortgage given by Rowcliffe and Paine to one George C. Zutavern, and that said lien had never been released, and that on the first day of November, 1892, said firm was dissolved, that the new firm of Rowcliffe & Cummins assumed the former debt of Rowcliffe & Paine and gave new notes and mortgages on the same property to the plaintiff for the same debt, and that on or about the 24th day of July, 1894, the said firm was dissolved and said Cummins sold his interest in said firm to his partner Rowcliffe and the said indebtedness of the firm to the plaintiff was transferred to said Rowcliffe, and said Rowcliffe thereupon executed a new note and mortgage to the plaintiff on the same property to secure said debt, that the agreement between the same parties was that·none of said chattel mortgages so given should be released of record until the indebtedness should be fully paid, but should remain on record as security against intervening liens and said mortgages have not been released of record.

"6. If the plaintiff has proved to your satisfaction by a preponderance of the evidence that such was the agreement and that the surrender of the notes given by Rowcliffe & Paine to Zutavern and giving of the new note by Rowcliffe & Cummins in lieu thereof did not constitute a payment of the debt of Rowcliffe & Paine, then the lien of the first mortgage continued and was not divested, but unless you find such was the agreement the surrender of the old notes and the giving of the new would release the lien of the first mortgage.

"7. The same instruction applies to the transaction between Rowcliffe & Cummins and the plaintiff and Willis Rowcliffe except that the notes of Rowcliffe & Cummins still remained in the hands of the plaintiff

raises the presumption that the giving of the new notes was not taken as payment of the old notes, and the burden of proof would be on the defendant to establish the truth of that contention. If you find that the giving of said notes by Willis Rowcliffe was taken and accepted by the plaintiff as payment of the Rowcliffe & Cummins notes, then the lien created by the prior mortgages was divested and the lien of the plaintiff would only date from said time, which the uncontradicted evidence shows was on or about the 24th day of July, 1894."

The giving of the sixth and seventh instructions was excepted to by the plaintiff, and they are now assigned as error. It is urged that these instructions incorrectly state the law, and that the evidence submitted did not warrant the submission of such an issue to the jury.

As to the first of the two instructions complained of, we do not think it subject to the objections raised. The burden of proving the allegations in its petition rested primarily on the plaintiff. The evidence disclosed that in the transactions wherein Paine sold his interest in the property in dispute to Cummins a new note and mortgage were executed, the original note being surrendered and canceled; and there is a sharp conflict of testimony as to plaintiff's agreement to release the mortgage given to secure the same. This being a controverted fact, it was proper for the jury to determine the truth of the matter. The transaction which resulted in the surrender and cancellation of the note originally given leads to the presumption of the payment and extinguishment of the then existing debt. By the evidence showing the surrender and cancellation of the note, a *prima facie* case of payment of the original debt was made, and irrespective of the state of the pleadings, the burden was upon the plaintiff to overcome this presumption by other competent evidence. *Smith v. Gardner*, 36 Nebr., 741; *Smith v. Harper*, 5 Cal., 329. Certainly the burden rested on the plaintiff to sustain the material allegations of the petition not admitted by the answer; and it was equally incumbent upon

it to overcome the presumption of payment of the original debt, and satisfaction of the mortgage lien securing the same, arising from the surrender and cancellation of the note evidencing such indebtedness, by competent proof to the contrary. The instruction fairly stated the law applicable to the issues and the evidence, and the objection thereto is not well taken.

As to the second of the two instructions objected to, we think the court not so fortunate in its expression of the law applicable to the case. While its tendency is towards a correct expression under the issues and the evidence as applied to the transaction to which it referred, it did not state the law as correctly and explicitly as it should have done. Its tendency was to confuse and mislead the jury as to the fact which it was their province to determine. It permitted them to infer payment and satisfaction of the antecedent debt without evidence of an express agreement of the parties to that effect. As to the transaction to which the instruction had reference, it is established by the evidence that in taking the renewal note and the mortgage of the sole purchaser of the entire interest in the mortgaged property, no alteration was made of the antecedent indebtedness, and that the note and mortgage which evidenced the same were retained and kept by the plaintiff. Under this state of facts, it was unnecessary for plaintiff to prove an agreement between the parties interested to keep alive and in force such antecedent debt, and the lien securing the same. The law accomplishes this for him without proof of an express agreement that such should be the case. Nor in such a transaction, where the prior note and mortgage remain uncanceled and in the hands of the creditor, does the law merely raise a presumption of non-payment of the original indebtedness. It is a positive conclusion of law that such indebtedness and the security therefor remain in full force and effect, unpaid and unsatisfied, unless there is proof of an express agreement between the parties that such new note and mortgage is given and

received as a payment and in satisfaction of the prior indebtedness. *Young v. Hibbs*, 5 Nebr., 433; *Day v. Leal*, 14 Johns. [N. Y.], 404; *Olcott v. Rathbone*, 5 Wend. [N. Y.], 490; *Daly v. Proetz*, 20 Minn., 411; *Alford v. Batker*, 53 Ind., 279; *Weakly v. Bell*, 9 Watts [Pa.], 273. It was incumbent on the defendants to show by the evidence that there was an express agreement between the parties that the note and mortgage of Rowcliffe was taken and accepted in payment and satisfaction of the Rowcliffe & Cummins note before they could recover on that issue, and the failure to so instruct the jury was prejudicial error. Another fatal objection to this instruction is that it presents to the jury an issue of fact not applicable under the evidence. Our attention has not been called to any place in the record where there is any evidence tending to prove any agreement between the parties as to payment of the Rowcliffe & Cummins indebtedness by the execution and delivery of the note and mortgage by Rowcliffe alone; nor has a careful scrutiny of the entire record revealed to us any such evidence. The only evidence upon the subject is by one witness, to the purport that he heard nothing said whatever relative to payment or other disposition of this prior indebtedness. This evidence is purely negative in its character, and proves, or tends to prove, nothing. Were it incumbent on plaintiff to prove an agreement that no payment was intended, the evidence might possibly be material, as tending to prove absence of such agreement; and the case seems to have been tried somewhat upon that theory.

In the brief of counsel it is suggested that, inasmuch as the plaintiff was seeking to foreclose its chattel mortgage last given, this is evidence of the payment of the note given for the original indebtedness. We do not so regard it. The note last given was held as collateral security to the original debt, unless there was an agreement that the debt should be paid by such note, and the plaintiff was at liberty to resort to such security for the satisfaction of the debt without in any way prejudicing him or

his right to look to the makers of the prior note or the security given therefor. Furthermore, it is shown by the evidence that plaintiff had resorted to both mortgages, and was endeavoring to secure satisfaction for the debt secured thereby by a sale of the property so mortgaged. There being an entire absence of evidence supporting the contention of payment of the Rowcliffe and Cummins note and the release of the mortgage security, it follows that the instruction given was inapplicable, and presented to the jury for its determination a fact not in controversy under the evidence.

There being no competent evidence of any payment or satisfaction of the Rowcliffe & Cummins note and mortgage, the lien of the plaintiff by virtue of this mortgage on the property in dispute is established as being in force from November 1, 1892, and the seizure of the mortgaged property for taxes due from the tax debtor, which became a lien subsequent to that date, was to that extent unauthorized, and the plaintiff's right of recovery for such unlawful seizure unquestioned.

While other questions are presented, those considered are of controlling interest, effectually dispose of the case, and render a further examination unnecessary. The judgment of the lower court is reversed, and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.