WILLIAM H. WOOLSEY ET AL. V. CHAMBERLAIN BANKING
HOUSE.

FILED OCTOBER 21, 1903.   No. 13,049.

Chattel Mortgage: TAXES: PRIORITIES. While the lien of a tax upon
  personal property is inferior to a chattel mortgage given after the
  taxes were levied, but before the tax books came into the hands
  of the collector, such mortgage is inferior to the lien of taxes
  levied and assessed against the mortgagor, for subsequent years,
  upon the property mortgaged remaining in his possession.

ERROR to the district court for Johnson county:
CHARLES B. LETTON, JUDGE.   Reversed.

Hugh La Master, for plaintiffs in error.

Lewis C. Chapman and M. B. C. True, contra.

KIRKPATRICK, C.

This is an action brought in the district court for John-
son county by the Chamberlain Banking House against
William H. Woolsey and his bondsmen for the conversion
of certain property in the possession of the banking house,
the latter holding that property as mortgagee. The sheriff,
Woolsey, attempted to justify under certain distress war-
rants for taxes due from the mortgagor. Under direction
of the trial court, the jury returned a verdict for the bank-
ing house, and judgment was accordingly entered, to re-
verse which the sheriff and his bondsmen bring the cause to
this court. This case was before this court at a former
term (60 Neb. 516), where the judgment was reversed be-
cause of erroneous instructions given by the trial court.
The controversy arose upon the following facts: Prior to
September 1, 1892, George C. Zutavern owned certain
livery stock, consisting of horses and buggies in Johnson
county, and was engaged in the livery business in the city
of Tecumseh. On the date named, he sold the stock to
Rowcliffe & Paine, who conducted the business until No-
vember 1, 1892, at which time a sale of the stock and busi-

ness was made to the firm of Rowcliffe & Cummins, who conducted the business until July 24, 1894, at which time Rowcliffe bought out Cummins and continued the business alone until July, 1895, when defendant in error took possession of the property under its mortgages. The mortgage lien of the banking house arose in the manner following: At the time Rowcliffe & Paine purchased the business from Zutavern, September 1, 1892, they executed to him notes for the purchase price, secured by a mortgage on the property purchased. Zutavern, almost immediately, sold the notes and mortgage to defendant in error. On November 1, 1892, when the second sale was made, and the firm became Rowcliffe & Cummins, the new firm gave its notes and a mortgage, and the old notes by Rowcliffe & Paine were surrendered and, presumably, paid, although the mortgage seems never to have been released. When the firm again changed, July 24, 1894, Rowcliffe became the sole owner of the property, and he gave his individual notes to defendant in error, secured by chattel mortgage, but defendant in error still retained the notes and mortgage given by Rowcliffe & Cummins; and it is upon these two mortgages, one given by Rowcliffe & Cummins November 1, 1892, and one given by Rowcliffe, individually, July 24, 1894, upon which defendant in error must recover, if at all. On July 8, 1895, the county treasurer of Johnson county issued and placed in the hands of the sheriff two distress warrants, one against Willis Rowcliffe, for $192.68, covering personal taxes assessed against him for the years 1891, 1892, 1893 and 1894, and one against Rowcliffe & Cummins, for $29.74, assessed against the copartnership for the year 1893, and it is under these distress warrants that the sheriff seeks to justify his seizure of the property which defendant in error held as mortgagee.

The tax lists for Johnson county seem to have been placed in the hands of the county treasurer upon the dates following: For the year 1891, on September 27 of that year; for the year 1892, on September 14 of that year; for the year 1893, on October 5 of that year; for the year 1894,

on October 11 of that year. The property did not become the individual property of Rowcliffe until July 24, 1894, so that it is quite clear that the personal taxes of Rowcliffe for the years described in the distress warrant did not become a lien upon the individual property of Rowcliffe until after he purchased it in 1894; and it would appear that there could be no question but that the mortgage liens are superior to the lien of the individual taxes of Rowcliffe. It would seem, therefore, that, so far as the distress warrant in the hands of the sheriff, first hereinbefore described, is concerned, it would furnish no justification to the sheriff for taking the property out of the possession of the mortgagee.

It remains to be considered whether the distress warrant against Rowcliffe & Cummins for the year 1893 is a lien superior to that of defendant in error. The question is not free from doubt, and our attention has not been called to any decision of this court upon it, or the decision of any other court of last resort, which may be said to be an authority. The tax for 1893, mentioned, became a lien upon all the property of Rowcliffe & Cummins, including that in controversy, October 5, 1893, the date when the tax collector received the books, and defendant in error claims a lien by virtue of a chattel mortgage executed by Rowcliffe & Cummins on November 1, 1892, and also a mortgage executed by Rowcliffe after he became the sole owner of the property on July 24, 1894. The question we are, therefore, called upon to determine is, whether a chattel mortgage on property remaining in the hands of the mortgagor is a superior lien to taxes assessed against such property for succeeding years.

Section 4, chapter 77, of the revenue law provides, "that personal property shall be valued by the assessor at its fair cash value." This would seem to contemplate an assessment upon the property itself, rather than upon the interest which the person in possession might have in the property assessed. Section 139 of the same chapter provides, "that taxes assessed upon personal property shall be

a lien upon the personal property of the person assessed, from and after the time the tax books are received by the collector," which would appear to fix the lien upon all the personal property owned by the tax debtor at the time the tax books pass into the hands of the collector; not only the property upon which the tax was levied, but all other personal property owned by the tax debtor at the time. This statute does not seem to limit the lien to the title or interest which the tax debtor may have in the property, but attaches the lien to the property itself.

It is contended, on behalf of defendant in error, that, the bank having received its chattel mortgage in 1892, and long prior to the levy of the taxes for 1893, upon which the distress warrant is issued, the lien of defendant: in error is a continuously superior lien to any tax that may thereafter be levied upon or against the specific property covered by the mortgage. For example, suppose A owns personal property consisting of live stock of the value of $500: He executes a mortgage upon the property to B, to secure the sum of $500, to mature at the end of five years, and retains possession of the property; that the property be regularly assessed for taxation in the hands of the owner of the property for each year, for the five years during which the mortgage ran before maturity, and even for a number of years thereafter, and that, at any time before the lien of the mortgage was barred by the statute of limitations, if the county sought to enforce its lien against the property for any of the years for which tax was due, the holder of the mortgage could claim the property, and thus defeat all tax liens that might exist: Each year the assessor might appear to tax the property, and A would say, B has a mortgage on this property for its full value, and while you may value and assess it for taxation if you desire, the county can never collect any tax until after the lien of B's mortgage is satisfied: And this might be repeated for each year, until B saw fit to take possession under his mortgage. We are unable to accept this construction of the law. We are of opinion that all property within the state is entitled

to the equal protection of the law, and is liable for its just proportion of the taxes necessary to support the government; that in the example given B must each year, as the taxes are assessed and become due upon the property mortgaged, suffer his security to be impaired to the extent of the taxes assessed, in order that the property may bear its just proportion of the expenses of government, and that the taxes assessed against the property, in whose possession soever it may be, is a lien upon the property, for the satisfaction of which the property is liable, unless the owner shall sell or mortgage it in the usual course of business, before the tax list for any particular year reaches the hands of the collector, in which event, the taxes for the year in which the sale was made might not be collected unless from other property of the tax debtor. We conceive that the doctrine is sound, that the owner of the property may sell or mortgage it at any time after the tax has been assessed and before the tax has become a lien upon the property under the law. No other construction could be entertained, without seriously interfering with the free exercise of the right to sell and dispose of property, and the purchaser or mortgagee, having no way to ascertain the amount of tax assessed against the property, would, except for such construction, be wholly without protection. But, after the tax list has been placed in the hands of the collector, the rule is otherwise, and the purchaser or mortgagee can, by an inspection of the records, ascertain the amount of taxes which are a lien upon the property he is about to purchase, and if the mortgagee retains the mortgage through succeeding years, leaving the mortgagor in possession, the tax for each succeeding year, as it matures, becomes a lien superior to that of the mortgage. We are unable to perceive any reason why the rule should be essentially different concerning taxes upon personal property than it is upon taxes affecting real estate. It is true, that, by the terms of the statute, taxes upon real estate are made a specific lien upon the property assessed, from and after April 1, of each year; but while there is a somewhat

Woolsey v. Chamberlain Banking House.

different wording of the statutes affecting personal property, there is no language requiring a different construction. It has always been conceded, in this state, that taxes upon real estate, assessed for the year subsequent to the execution and delivery of the mortgage, become, for each succeeding year, a lien superior to the mortgage, and the holders of real estate mortgages have always understood that they must protect the mortgaged realty by the payment of taxes, or suffer the loss of their lien. So with the lien upon personal property. We are of opinion that the tax assessed against personal property, in each succeeding year, becomes a lien superior to the lien of a chattel mortgage, executed during a prior year.

It is contended, by counsel for defendant in error, that, at the former determination of this case, there was a ruling contrary to the conclusion we have reached. We do not so read that decision. The question now presented was not in the case when it was here before, and the doctrine announced in that decision can be considered authority only so far as it was necessary for and applicable to the questions presented. We are unable to find any decision of this court, or any statute of this state, in conflict with the conclusion we have announced, and it follows that the lien for the taxes against Rowcliffe & Cummins, for the year 1893, was a lien superior to that of defendant in error, and that the peremptory instruction of the court was, to that extent, wrong, requiring a reversal of this judgment. It is therefore recommended that the judgment of the district court be reversed and the cause remanded for further proceedings.

DUFFIE and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded.

REVERSED.