PLATTE VALLEY MILLING COMPANY, APPELLANT, V. LARS J. MALMSTEN, COUNTY TREASURER, ET AL., APPELLEES.*

FILED JULY 12, 1907. No. 14,908.

1. **Taxation: LIEN.** The filing with the treasurer of a tax list without the warrant required by section 83 of the revenue law of 1879 (laws 1879, p. 306) does not create a lien upon the personal property of the person assessed under the provisions of section 139 of the same act. The words "tax books" in the latter section *held* to mean the tax list with warrant attached.

2. ———: ———: CHATTEL MORTGAGE. The lien of a chattel mortgage taken before the tax books were delivered to the treasurer is superior to the lien for taxes for that year, created by such delivery, under the provisions of section 139 of the revenue law of 1879 (laws 1879, p. 332), but inferior to the lien for subsequent years. *Woolsey v. Chamberlain Banking House*, 70 Neb. 194, followed.

3. **Equity: OFFER IN PETITION.** An offer to do equity is only required to be made in the petition in those cases where an equitable duty or obligation rests upon the plaintiff, and where such duty or obligation could not be enforced by the court except for such offer.

---

*Rehearing allowed. See opinion, p. 735, *post.* Second rehearing denied. See opinion, p. 741, *post.*

APPEAL from the district court for Dawson county: BRUNO O. HOSTETLER, JUDGE. *Reversed with directions.*

*E. A. Cook* and *G. W. Fox*, for appellant.

*J. H. Linderman* and *T. L. Warrington*, contra.

CALKINS, C.

In 1892 the Star Mills & Grain Company owned a flouring mill and machinery located upon the right of way of the Union Pacific railroad in Dawson county. Taxes were assessed against this company and entered upon the tax lists for the years 1892, 1893, 1894. These lists were within the proper time delivered to the county treasurer, but the county clerk failed to attach the warrant required by section 83, ch. 77, Comp. St. which was then in force. Taxes were levied against this company for the years 1898, 1899, 1900, and 1901, and the tax lists delivered to the county treasurer on the 1st day of October in each of these years. The county clerk attached the warrant to these lists shortly after the delivery to the treasurer, and during the month of October in each year, except 1900, in which year the warrant was not attached until November 24. On the 1st day of May, 1897, the said Star Mills & Grain Company executed a chattel mortgage upon the mill and machinery, which was renewed by another chattel mortgage executed on the 1st of May, 1898. The latter mortgage was foreclosed by action in the district court, and the premises were, in pursuance of the order made by said court in said proceedings, on the 6th day of December, 1901, conveyed by the sheriff to the mortgagees, who afterwards sold the same to the plaintiff. In May, 1906, the county clerk attached warrants to each of the tax lists for the years 1892, 1893, 1894. None of said taxes being paid, the treasurer then issued a distress warrant to the sheriff as special collector, commanding him to collect from the Star Mills & Grain Company, by distress and sale of its goods and chattels, the entire amount of

the taxes of. 1892, 1893, 1894, 1898, 1899, 1900, 1901. Under this warrant the sheriff threatened to seize the mill and machinery, which had been conveyed to the plaintiff; and the plaintiff brought this action to restrain the treasurer and the sheriff as such special collector from levying upon the said mill and machinery for the collection of said taxes. The district court found for the plaintiff as to the taxes of 1898, and against the plaintiff as to the taxes of each and all of the other years, and from a verdict rendered upon this finding the plaintiff appeals.

1. The revenue law in force prior to September 1, 1903, provided that the tax list should be completed and delivered to the county treasurer on or before the 1st day of October annually, and that before its delivery the county clerk should attach thereto a warrant under the seal of the county, which warrant should be signed by the clerk, and should in general terms command the said treasurer to collect the taxes therein mentioned according to law; but that no informality or delay in delivering the same after the time specified should affect the validity of any taxes or sales or proceedings for the collection of taxes. Comp. St. 1881, ch. 77, art. I, sec. 83. The same statute provided that the taxes assessed upon personal property should be a lien upon the personal property of the person assessed from and after the time the tax books were received by the collector. Section 139. The power of the treasurer to collect personal taxes without the warrant of the county clerk attached to the list has been denied by this court. *Reynolds v. Fisher*, 43 Neb. 172; *Grant v. Bartholomew*, 57 Neb. 673. In the former case the court, referring to section 83, say: "The warrant provided for in this section is the treasurer's authority for enforcing the collection of any and each particular tax of the list to which it is attached when it becomes necessary to resort to any of the proceedings provided by law. To collect the tax, then, the warrant must be in the hands of the collector, and, in this state, attached to the tax list, as his authorization to institute such proceedings. If he pro-

ceeds without it, he becomes a trespasser. An officer of the law who makes a levy must be empowered to do so by the proper writ in his possession. So with the treasurer. The warrant required by the law to be attached to the tax list is the source of the right to use the means of collection provided by the statute." The law requires the list of the taxes to be made, and, when the warrant of the county clerk under the seal of the county is attached thereto, that the completed document be filed with the county treasurer. This constitutes the tax books mentioned in section 139. It was not contemplated that the list should be filed with the treasurer until the warrant was attached. On the contrary, the statute expressly provides that the warrant must be attached before the delivery. The list unsigned and unauthenticated could not have any legal or binding force. Such is the universal rule with reference to documents issued by one public officer and filed in the office of another. A familiar illustration is the rule frequently announced by this court that an unsigned and unauthenticated transcript gives it no jurisdiction, and that the filing of an unauthenticated bill of exceptions has no effect. The principle is the same, and we are of the opinion that the filing of the list without the warrant attached did not create a lien upon the personal property of the Star Mills & Grain Company. The defendant argues that the filing of the warrant with the treasurer in May, 1906, validated this tax; but this argument is based upon the assumption that the lien already existed, and it must necessarily fall with the negation of that assumption.

2. This brings us to the taxes of 1898, 1899, 1900, 1901. As we have seen, the court below enjoined the collection of the taxes of 1898, and refused to restrain the collection of those levied for the other years above mentioned. This was done upon the authority of the case of *Woolsey v. Chamberlain Banking House*, 70 Neb. 194, where it was held that a chattel mortgage taken upon property before the tax books for the year in which the mortgage is given

are delivered to the treasurer is superior to the lien of the taxes of that year. That case is in point, and we are satisfied with the rule there adopted for the reasons set forth in the opinion in that case.

3. The defendant interposes an objection to the sufficiency of the petition, on the ground that the plaintiff does not offer to pay the taxes which were a lien upon the property in question. It is a familiar maxim of equity that he who seeks equity must do equity, and in some cases it is held that the offer to do equity must be contained in the bill; but in most instances this principle is satisfied by the court's making, in its decree, the relief awarded the plaintiff conditioned upon his performance of such equitable obligations as may be imposed upon him. The rule seems to be that the offer to do equity must be made in the petition in those cases where the court could not otherwise enforce the obligation: but, if the right of the defendant does not depend upon any offers or concessions which the plaintiff makes in his bill, it is then unnecessary. *Barnard v. Cushman,* 35 Ill. 451. In this case the taxes were not levied against the plaintiff, and the plaintiff was under no obligation to pay them. It might be compelled to pay such as were a lien to save its property from sale, but this liability was a purely legal and not an equitable one. The plaintiff contested, not the taxes, but the right of the county to satisfy the same out of his property, and it follows from the conclusions hereinbefore stated that a part of these taxes were a lien upon property which the plaintiff had acquired. The plaintiff might have entitled itself to costs and to a suspension of the interest by a proper tender of the amount of the taxes which were an actual lien upon its property before the commencement of the suit; but it was not necessary for it to do so in order to prevent the sale of its property for taxes which were not a lien upon it. The right of the defendant to have the taxes which constituted a lien upon the plaintiff's property paid can be satisfied, and the maxim of equity above quoted enforced, by making the

relief granted the plaintiff conditioned upon the payment, within a time to be fixed by the court, of the taxes which are found to be a lien upon the said property.

We therefore recommend that the judgment be reversed as to the taxes of 1892, 1893, 1894, and the cause remanded for further proceedings in accordance with this opinion.

JACKSON and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed as to the taxes of 1892, 1893, 1894, and the cause remanded for further proceedings in accordance with said opinion.

REVERSED.

The following opinion on rehearing was filed June 4, 1908. *Former judgment of reversal as modified adhered to:*

1. **Taxation:** SEIZURE OF PERSONALTY. The tax list in the hands of the county treasurer will authorize him to receive and collect the taxes described therein; but to invest him with jurisdiction to seize personal property for the satisfaction or enforcement of a tax lien thereon, the clerk's warrant provided for by statute must be attached to such list.

2. ———: ———. Until such a warrant is attached to the tax list there exists no enforceable lien for the payment of the taxes against the personal property of a tax debtor.

3. ———: LIENS: PRIORITIES. A purchaser of personal property under mortgage sale, before the tax lien has attached, takes it free of all claims for the taxes.

BARNES, C. J.

This case is before us on a rehearing. Our former opinion will be found, *ante,* p. 730, where the facts appear so fully that no additional statement is required.

It was urged by the defendants in support of the motion for a rehearing, and is now contended, that so much of our former opinion as holds that the delivery of the

tax books to the county treasurer, without the clerk's warrant attached directing him to collect the taxes described therein, did not create a lien upon the personal property of the tax debtor; that the tax books mentioned in section 83 of the revenue law of 1879 (laws 1879, p. 306), now superseded by section 11040, Ann. St. 1907, are not the tax books, within the meaning of that section, without the clerk's warrant attached thereto; and that so much of our judgment as restrains the defendant from collecting the taxes assessed against the Star Mills & Grain Company for the years 1892, 1893 and 1894, by levy and sale of the flouring mill and machinery formerly owned by that company, but now owned by the plaintiff, should be reversed.

After again considering this question, we are satisfied that the conclusion reached by our former opinion is correct. We believe, however, that some of the expressions contained therein should be modified. By section 139 of the revenue law of 1879 (laws 1879, p. 332), it was provided: "The taxes assessed upon personal property shall be a lien upon the personal property of the person assessed, from and after the time the tax books are received by the collector," and it was said in our former opinion that the treasurer has no power to collect personal taxes without the warrant of the county clerk attached to the tax list. It is settled beyond question that the warrant is the authority for enforcing the collection of any and each particular tax of the list to which it is attached, when it becomes necessary to resort to any of the proceedings provided by law for that purpose. This, however, does not affect the right of the treasurer, when the tax list is in his hands, to receive and collect personal taxes without distress and sale; but, in order to authorize him to enforce collection by such proceedings, the clerk's warrant must be attached to the tax list as his authority therefor. It has been held by a majority of the courts, and we think correctly so, that the levy of the tax, the making of the tax list, and the placing of the same in the

hands of the county treasurer, creates what may be termed a general lien for the payment of the taxes described therein upon all of the personal property of each tax debtor, that this amounts in law to a judgment, and that the clerk's warrant, which the statute provides shall be attached to the tax books, is in effect an execution. In order, however, to create a specific lien upon any of the property owned by a tax debtor, a distress warrant must be levied thereon.

It is conceded in this case that no warrant for the collection of the taxes was attached to the tax lists for the years 1892, 1893 and 1894, until some time in the year 1906. So, while the tax books and the tax proceedings may have constituted what may be called a general lien upon the property of the Star Mills & Grain Company, yet it was not such a lien as the tax collector could enforce. The treasurer could not at any time after the taxes in question were assessed and levied, and before the property of the Star Mills & Grain Company was sold to the plaintiff, have levied upon any of the property of the tax debtor, and thereby have rendered the lien specific. This being the case, a *bona fide* purchaser, which the plaintiff is conceded to be, of any of the property of the tax debtor would take the same discharged of any lien for the taxes of those years.

It is fundamental that taxes are not a lien either upon real or personal property unless made so by statute. The section of our former statute which created a lien for personal taxes was taken from, and is a literal copy of, the revenue law of the state of Illinois on that subject. It was said by the supreme court of that state in *Gaar, Scott & Co. v. Hurd,* 92 Ill. 315: "The mere assessment of taxes in respect of personal property will not create a lien upon such property. The warrant for the collection of such taxes will, however, become a lien upon the personal property of the person assessed, from the time it comes to the officer's hands. But, if the party assessed

50

should sell or mortgage the property before the warrant comes to the hands of the officer, the purchaser or mortgagee will be protected as against any subsequent seizure and sale of the property under such warrant for the taxes assessed against the vendor or mortgagor." In *Hill v. Figley*, 23 Ill. 418, in speaking of the effect of the section in question, the supreme court of that state said: "It is true that the statute declares that the assessment shall be a lien from and after the delivery of the books to the collector. A lien upon what? * * * Not upon the property assessed for taxation, but upon his personal property. The language is manifestly broad enough to embrace, and we think does embrace, all of the personal property which he owned at that time. We have no doubt that such was the intention of the legislature in adopting this provision. The object the legislature had in view was to secure the collection of the revenue, and, if the construction were given that the lien only extended to the specific articles assessed, the object would not be attained. The assessments are made in May and June, and the collector's books do not come into the hands of the officer before November, so that with traders and business men of the country all, or the greater portion, of the property assessed by them, in the interim, changes hands, and much of it is consumed. And with others, a large portion changes hands, is removed, or cannot be identified. If the lien is to be confined to the property assessed, by the same rule of construction, we must hold that it attaches to each article of property to the extent only of the amount of tax assessed upon it. This would lead to great perplexity and confusion, as each specific article of property is not, nor does the law require it to be, enumerated, with its value annexed. The amount of the tax on personal property is given in an aggregate sum on the collector's books, and it would be impossible to ascertain the precise amount for which the books were a lien on each article. The legislature never could have designed to impose such difficulties in the collection of the revenue. * * * We

have no hesitation in believing that the legislature intended to bind all the personal property in the hands of the taxpayer, from the time the collector receives his warrant until it is paid, precisely as an execution binds the property of the debtor on its delivery to the officer." It would therefore seem that the existence of an enforceable lien against the property of the tax debtor depends upon the fact that the tax books placed in the hands of the collector have attached thereto the clerk's warrant. In *Ream v. Stone,* 102 Ill. 359, it was said: "It will thus be seen that the warrant is an indispensable part of the tax books, and that it is that which confers power upon the collector to levy and distrain for the payment of the tax. And so, in *Hill v. Figley,* 23 Ill. 418, we said: 'We have no hesitation in believing that the legislature intended to bind all the personal property in the hands of the taxpayer, from the time the collector receives his warrant until it is paid, precisely as an execution binds the property of the debtor on its delivery to the officer.' And again, in *Binkert v. Wabash R. Co.,* 98 Ill. 218, we said: 'When the tax books come to the collector's hands, the personal taxes at once, and not before, just like an execution, become a lien upon the personal property which the person assessed then owns, without regard to what he may have owned when the assessment was made.' And the same analogy requires us to hold that, if no levy shall be made by the expiration of the time within which the collector is required to make return, the warrant is officially dead, and then all liens which might have been, but were not, perfected by a levy, are gone. * * * It is here shown no warrants were annexed to the collector's books for the years 1873, 1874 and 1875, and so no distress was nor could have been made for the taxes of those years. * * * Back taxes cannot be made a lien, any more than current taxes, upon personal property, until the collector's books, with a warrant authorizing their collection, is placed in the hands of the collector. * * * We held in *Binkert v. Wabash R. Co., supra,* and in *Gaar, Scott & Co. v. Hurd,* 92 Ill. 315, that

the purchaser of personal property, under mortgage sale, before a lien for the taxes had attached, took the property free of all claim for the taxes, and, inasmuch as no lien was here perfected upon the property before the purchase and possession by complainant, we cannot regard it as of consequence whether the mortgage was, or not, properly acknowledged as a chattel mortgage. It was certainly sufficient, where possession was obtained by a purchaser under it, as against subsequent claims." In *Woolsey v. Chamberlain Banking House,* 70 Neb. 194, it was held that a lien of a chattel mortgage given after the taxes were levied, but before the tax books came into the hands of the collector, was superior to the lien of the taxes for that year. In that case the warrant was properly attached to the tax list when delivered to the county treasurer. In *Grant v. Bartholomew,* 57 Neb. 673, it was said: "The personal tax list, when delivered to the county treasurer, is analogous to a judgment, and to enable the treasurer to satisfy the tax—judgment—by the seizure of the personal property of the tax debtor, it is essential that the treasurer should be armed with the tax warrant, which in that case is his execution." From the foregoing authorities it seems clear that, when, in the year 1901, the property of the Star Mills & Grain Company, the tax debtor, was sold and delivered to the plaintiff, there was no enforceable tax lien existing against it, for the reason that no clerk's warrant was attached to the tax lists then in the hands of the county treasurer. The plaintiff therefore took the property in question free and clear of any lien for personal taxes assessed against its former owner. It also seems clear to us that attaching the warrant to the tax list in question in the year 1906 created no lien against the property theretofore purchased by the plaintiff, and had no retroactive effect, so far as his rights are concerned.

For the foregoing reasons, our former judgment as herein modified is adhered to.

JUDGMENT ACCORDINGLY.

The following opinion on motion for second rehearing was filed October 8, 1908. *Motion overruled:*

BARNES, C. J.

Appellant has filed a motion for a rehearing in this case for the reason, among others, that he is in doubt as to what disposition was made of the taxes of 1898, 1899, 1900 and 1901. We hardly think he intends to seriously urge that contention, for, after quoting from the opinion the words, "when in the year 1901 the property of the Star Mills & Grain Company (the tax debtor) was sold and delivered to the plaintiff, there was no enforceable tax lien existing," he says: "We think this language was not intended to apply to anything but the question presented to the judges on the rehearing." We do not see how any doubt could have arisen in the mind of any one about the matter. In our first opinion only so much of the judgment of the district court as related to the taxes of 1892, 1893 and 1894 was reversed, and as to the taxes of the subsequent years that judgment was affirmed. On the rehearing the only question discussed or considered was whether we would adhere to our former opinion. The rehearing in this case was allowed, and the present opinion written, solely for the purpose of correcting the statement that "the treasurer is without power or authority to collect or receive taxes assessed on personal property when no warrant is attached to the tax list." By the present opinion this correction is made, and in all other things our former judgment is adhered to. Again, the words "unenforceable lien," found in our opinion, have been made the subject of some criticism. This does not merit our serious consideration, for we find warrant for the expression in the decisions of the courts of Arkansas, California, Michigan, Missouri and North Carolina.

Finally, the effect of the present opinion, in so far as it affects the taxes of 1898, is to approve of *Woolsey v. Chamberlain Banking House*, 70 Neb. 194, and, also, to adhere to

the rule that the treasurer may sell real estate for the taxes delinquent thereon, notwithstanding the fact that no warrant is attached to the tax list. See *Grant v. Bartholomew,* 57 Neb. 673. We thus harmonize our earlier decisions, and adhere to the rule that, where no clerk's warrant is attached to the tax list, the treasurer is without power to collect personal taxes by distress and sale; and, while he may receive voluntary payment of such taxes, still, until the tax warrant provided for by our former statute is attached to the tax list, there exists no enforceable lien against the property of the tax debtor.

The motion for a rehearing is therefore

OVERRULED.